(No. 37984.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MANDEL SKAR, Plaintiff in Error.

*Opinion filed March 18, 1964.*

492

Underwood, J., took no part.
Schaefer and Solfisburg, JJ., dissenting.

Frank G. Whalen, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and Louis B. Garippo, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice House delivered the opinion of the court:

In 1963 the grand jury for the criminal court of Cook County issued a *subpoena duces tecum* directed to Sahara Inn North, Inc., a corporation, and Mandel Skar, president of the corporation, directing them to produce certain records. The subpoena was served on Mandel Skar, the defendant herein, and he appeared before the grand jury but did not produce the records called for by the subpoena. The

foreman of the grand jury filed a petition in the criminal court asking that a rule be entered directing the defendant to show cause why he should not be held in contempt of court. A rule was entered and a hearing was held. The State introduced no evidence in support of the allegations of the petition and the defendant moved to dismiss the petition and discharge the rule. The court denied the motion and the defendant testified under oath in an attempt to explain his failure to produce the records. At the conclusion of the defendant's testimony the court found the defendant guilty of contempt of court and sentenced him to a term of 6 months in the county jail. A writ of error has issued from this court to review the judgment of conviction, a constitutional question being involved.

The defendant was charged with failure to obey the command of a lawfully issued subpoena. This conduct, if contemptuous, constituted a direct contempt of court, which has been defined as any conduct which tends to embarass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrepute. Direct contempts are divided into two classes; those which are committed in open court in the view and hearing of the judge, and those committed in any place set apart for the use of a constituent part of the court, even though the conduct complained of was not personally seen or heard by the judge. (*People* v. *Hagopian,* 408 Ill. 618, 621.) In the first class of cases, the trial judge may act upon his personal knowledge of the facts and may punish the offender summarily without the filing of a petition, the entry of a rule to show cause, or a hearing. (*People* v. *Loughran,* 2 Ill.2d 258.) The conduct involved here falls within the second class of direct contempts and the question presented is whether the procedure followed by the trial court in finding the defendant guilty conformed to the requirements of due process of law. In *In re Oliver,* 333 U.S. 257, 92 L. ed. 682, 68 S. Ct. 499, the United States Supreme Court was

concerned with the question of the propriety of a summary sentence for contempt by a judge who had also acted as a one-man grand jury, under procedure authorized by the law of Michigan. In considering the problem the court reviewed prior authorities concerning the power of courts to punish for contempt. The court recognized the rule that where the contempt is committed in open court in the view of the judge, a judge has power to punish the offender at once without notice and without hearing. The court went on to point out that this summary power was extraordinary and constituted a departure from the accepted standards of due process and was only justified as "the least possible power adequate to the end proposed." (333 U.S. 257, 274; 68 S. Ct. 499, 508.) The court held that except for this narrowly limited category of contempts, where all the essential elements of the misconduct are actually observed by the court, due process of law requires a fair and impartial hearing. The court said (333 U.S. 273): "We further hold that failure to afford the petitioner a reasonable opportunity to defend himself against the charge of false and evasive swearing was a denial of due process of law. A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, *a right to examine the witnesses against him,* to offer testimony, and to be represented by counsel." (Emphasis supplied.)

Our holdings in similar cases make it clear that in this class of contempts, due process requires that the charges be established by evidence. In *People* v. *Spain,* 307 Ill. 283, the defendant was found guilty of contempt of court for his refusal to answer certain questions before the grand jury. We reversed the conviction and said, (p. 292,) "When Spain was brought before the court on the charges preferred against him by the grand jury, he was entitled to a full and impartial hearing. Proceedings of this character are of

necessity summary, but that does not prevent the courts from giving the accused all his rights under the law. He must be given the fullest opportunity to defend himself. [Citing cases.] Where one is charged with criminal contempt he is entitled to the same orderly trial accorded any other defendant. *He is presumed to be innocent until his guilt is established beyond a reasonable doubt  *  *  *."* (Emphasis supplied.)

In *In Re Estate of Kelly,* 365 Ill. 174, the defendant was found guilty of direct contempt of court for allegedly knowingly presenting a false will for probate. We considered whether the defendant was charged with direct or indirect contempt and held that the contempt was direct since it had been committed in a constituent part of the court although out of the personal view of the judge. We held since the judge had no personal knowledge of the offense, extrinsic evidence to substantiate the charge was essential. In *People v. Howarth,* 415 Ill. 499, we again had occasion to consider the distinction between a direct contempt committed in the view of the judge and a direct contempt committed in a constituent part of the court outside the personal presence of the judge, and said, (p. 508) "However, when a direct contempt occurs in a constituent part of the court and not in the immediate presence of the judge, as is the case here, extrinsic evidence is essential to substantiate the charge."

In the present case the record shows that the State introduced no evidence in support of the petition. Counsel for the State said, "The State is ready, Your Honor, and since there is no answer that has been filed, at this time, the State would ask to stand on the petition that is before the court." We think it is clear from a consideration of the authorities discussed herein that due process requires something more. In *People v. Spain* we held that in cases of this sort, a defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. The *Kelly* and *Howarth* cases

establish that in such cases extrinsic evidence is necessary to support the charges made in the petition. In the present case the defendant was found guilty without any evidence being heard in support of the petition. In our opinion this procedure deprived him of due process of law and rendered the finding of guilty invalid. The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*

Mr. JUSTICE UNDERWOOD took no part in the consideration or decision of this case.

Mr. JUSTICE SCHAEFER, dissenting:

The judgment has been reversed in this case on the ground that it was imperative that extrinsic evidence be introduced to support the allegations of the petition, and no such evidence was offered. But a full reading of the record satisfies me that the trial judge was justified in considering that the respondent had waived his right to answer the allegations of the petition. Since those allegations were not denied, no useful purpose could have been served by requiring extrinsic evidence to establish their truth.

The grand jury *subpoena duces tecum,* addressed to the Sahara Inn North, Inc.,—Mandel Skar, President, was issued on March 14, returnable on March 18. It was served on March 15. It recited the pendency before the grand jury of a complaint "against Michael Russo, *et al.*: an investigation into the theft of building materials from Edmier Inc.", and it called for the production of the following records of Sahara Inn North, Inc.

a. All records of cash receipts and disbursements on all bank accounts since incorporation.

b. All cancelled checks and all bank statements on all accounts since incorporation.

c. All contracts with subcontractors for contracts of the motel at 3939 North Mannheim Road, Schiller Park, Illinois.

d. General journal and journal ledger from the period of incorporation to date.

On March 25, 1963, the foreman of the grand jury presented a petition reciting the issuance and service of the *subpoena* and stating that the books and records were necessary and material to an investigation being conducted by the grand jury into the theft of building materials from Edmier, Inc. It pointed out that the records sought from Sahara Inn North, Inc. would show the contracts for the construction of the Inn and all moneys paid out and received during the period of its construction. The petition further stated that Mandel Skar had appeared before the grand jury, that he wilfully failed to produce before the grand jury all of the books and records required by the *subpoena* and that the records which he did produce pertained to the period after June, 1962, and did not cover the period of construction. It also recited that Skar had stated to the grand jury that the records that he produced were all that he had in his possession and that when he was asked whether records pertaining to periods prior to June, 1962 "were ever in existence or are now in existence said Mandel Skar refused to answer on the grounds that the answers may tend to incriminate him." The petition requested that the court enter a rule upon Skar to show cause why he should not be held in contempt for failure to produce the books and records of the corporation as required by the *subpoena duces tecum.*

The term of the grand jury was about to expire on March 29, and on March 27, after earlier skirmishes before the court with respect to the respondent's failure to appear before the grand jury, the hearing upon the petition was continued until March 28 at 2:00 P.M. to enable the respondent's attorney to answer the petition. When the matter was called for hearing on March 28, the respondent's attorney answered that he was ready, and the court inquired whether he had filed an answer. Respondent's attorney re-

plied, "We will answer. I want to have him testify. I don't think I have to file an answer." The assistant state's attorney then made the statement quoted in the opinion of the court, that since no answer was filed, the State would stand upon the petition. Respondent's attorney thereupon moved to dismiss the petition and discharge the rule.

In my opinion the trial court properly interpreted the statement of the respondent's attorney as a waiver of his right to put in issue the allegations of the petition, and properly refused to permit him to shift his position after the State had acted in reliance upon that waiver. Of course one who is charged with contempt outside the presence of the court is entitled to notice and an opportunity to be heard. The cases cited in the opinion of the court go no further than that. None of them holds that the right to controvert the allegations of a petition like this one may not be waived, and none of them stands for the proposition that undenied allegations must be proved.

On this issue there are no relevant decisions of this court, but when the question has arisen in other jurisdictions it has been held that the right to require proof of the allegations of a contempt petition may be waived. *State ex rel. Wright* v. *Hinckle,* 137 Neb. 735, 291 N.W. is such a case. There the court quoted the following language from its syllabus in *Nebraska Children's Home Society* v. *State,* 57 Neb. 765, 78 N.W. 267, 268: "Where a contempt proceeding is instituted by information and a rule to show cause, it is the duty of the defendant to file an answer if he desires to traverse the facts charged. Failing, on sufficient opportunity, to so do, the court may treat the facts alleged in the information as confessed." *Zobel* v. *People ex rel. Kyle,* 49 Colo. 142, 111 Pac. 846, is to the same effect. No reason is suggested in the opinion of the court to justify a different result in this case.

The respondent did not deny that he was the custodian of the records, that he was properly served with a *subpoena*

or that he failed to produce the records that he was commanded to produce. He could hardly have disputed these allegations of the petition, and I think that his attorney made it amply clear that he was not interested in doing so. In response to questions put to him by his attorney, he testified that he was the president of Sahara Inn North, Inc., that in response to a *subpoena duces tecum* he had produced before the grand jury all of the corporate records that were in his custody, possession or control and that he had not wilfully refused to comply with the *subpoena*. He also testified that he had had in his possession corporate records other than those he produced before the grand jury. When he was asked what he did with those records he answered: "I gathered them—I was in Florida at the time. I gathered all of these records, put them in a suitcase with some clothes and checked them at the Miami Beach Airport." He testified that the suitcase was checked with Eastern Air Lines "and then it was switched over to Delta Air Lines." He testified that he had received a claim check, had made a claim for the records, but had not seen them since, and had no knowledge as to their whereabouts. On cross-examination the respondent claimed his privilege against self-incrimination when he was asked whether or not he went to Florida after he had been served with the *subpoena* and he repeated that claim of privilege as to all questions concerning the specific records that he had in his possession in Florida.

From this testimony it is clear that the only element of the offense which the respondent ever wished to controvert was that of wilfulness. But an officer who has custody of corporate records and fails to comply with a lawful *subpoena* can not escape the sanctions of contempt merely by asserting that his noncompliance was not wilful. In such a case the burden of establishing the defense of inability to comply is upon the respondent. (*United States* v. *Fleischman,* 339 U.S. 349, 362-364 94 L. ed. 906; see also *People* v. *Rezek,* 410 Ill. 618, 628-629.) This rule was applied in

the *Fleischman* case even though the records there were concededly under the joint control of a sixteen member board and no showing was made that the individual respondent could have produced them.

So far as the respondent's privilege against self-incrimination is concerned, his testimony on direct examination had clearly waived his privilege as to the matters concerning which he had voluntarily made a partial disclosure. The books and records were those of the corporation, and under the decisions of the Supreme Court of the United States, (*Hale* v. *Henkel,* 201 U.S. 43, 50 L. ed. 652; *Wilson* v. *United States,* 221 U.S. 361 55 L. ed. 771,) and of this court, (*People* v. *Munday,* 280 Ill. 32; *People* v. *Ryan,* 410 Ill. 486, 494) no claim of privilege based upon what those records might disclose was available to the respondent. No ruling on the claims of privilege was sought, however, and no effort was made to establish his contempt for failure to answer.

Instead, the trial court chose to evaluate the testimony that the respondent offered to justify his failure to comply with the *subpoena.* In making that evaluation, he was entitled to take into account the inference that flowed naturally from the respondent's claim of privilege as to significant questions on cross-examination. As Wigmore puts it: "Furthermore, where the party refuses to answer and claims privilege as to the matter which in truth is included in the waiver, but the answer is *not insisted upon,* the inference is of course available  *  *  *." 8 Wigmore on Evidence, sec. 2273; see also McCormick on Evidence, sec. 132.

In my opinion the judgment should be affirmed.

Mr. JUSTICE SOLFISBURG joins in this dissent.