(No. 41534.—)

THE PEOPLE *ex rel.* Liza Jane Melendez, by her mother and next friend Phyllis Jane Roselle, Appellee, *vs.* JULIO A. MELENDEZ, a/k/a JULIO CRUZ, Appellant.

*Opinion filed January 25, 1971.*

RUTH PACE COMROE, of Zimmerman and Comroe, of Chicago, for appellant.

JEROME FELDMAN, of Chicago, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

On June 28, 1968, the respondent, Julio A. Melendez, was adjudged in criminal contempt of the circuit court of Cook County for his failure, after the issuance of a writ of *habeas corpus,* to produce Liza Jane Melendez, the minor child of him and the petitioner, Phyllis Jane Roselle. The circuit court ordered him committed to the county jail for

a term of one year. He appeals directly to this court under our Rule 302(a) (43 Ill.2d R. 302), contending that the procedure by which he was adjudged in contempt of court violated his constitutional rights and that the trial court erred in not granting his motion to dismiss the writ.

The petitioner, who is the natural mother of Liza Jane, a child of three and one-half years of age, filed a petition on May 24, 1968, for a writ of *habeas corpus* directed against the respondent, the putative father of Liza Jane, the minor child. The petition alleged that the respondent had removed the minor child from the care and custody of the petitioner and was intending to remove the child from the State of Illinois. On May 27 the circuit court ordered a writ of *habeas corpus* to issue directing the respondent to produce Liza Jane before the court on May 29, 1968. It appears that on May 29, 1968, the respondent appeared, *pro se*, and advised the court that he had sent Liza Jane to the care of his parents in Puerto Rico on May 11, 1968. The court ordered the respondent to produce the child in court on June 12, 1968. The respondent returned to court on that date, represented by counsel, and filed a motion to quash the writ and to vacate the order of May 29, 1968.

This motion declared that the petitioner had knowledge, prior to instituting the *habeas corpus* proceeding, that Liza Jane had been returned to her grandparents in Puerto Rico, who were, he claimed, the legal guardians of the child under the laws of Puerto Rico. It also stated that the petitioner and respondent had agreed about three years before that the child would reside in Puerto Rico in the custody of the paternal grandparents. Further, the motion stated that the respondent, prior to taking the child to Illinois, had executed an affidavit before a notary in Puerto Rico. He thereby, it was alleged, had placed himself under the jurisdiction of Puerto Rico. In the affidavit, the motion continued, he had agreed to return the child to her grandparents at the expiration of her visit, which was not to exceed three

months. Finally, the motion alleged that the child was then under the jurisdiction of the courts of Puerto Rico by reason of a proceeding which had been instituted by the paternal grandparents to restrain him from removing Liza Jane from Puerto Rico. In support of the motion the respondent filed a copy of the affidavit he had executed in Puerto Rico, a letter written by his attorney to attorneys in Puerto Rico, who apparently represented the paternal grandparents, demanding that the paternal grandparents produce the minor child before the court in Cook County, and a copy of the pleadings filed with the court in Puerto Rico by the paternal grandparents. The petitioner was given until June 26, 1968 to answer the respondent's motion. The court after argument on June 26, 1968, gave the petitioner until June 28, 1968, to submit authorities in support of her contention that the respondent should be held in contempt for failure to produce Liza Jane. On June 28, 1968, after additional argument, the court, apparently on the authority of *Faris* v. *Faris,* 35 Ill.2d 305, dismissed the respondent's motion to quash the writ and found him in direct contempt of the court and ordered him committed for a term of one year.

The respondent contends here that the trial court erroneously considered its citation of him as a citation for direct contempt. He argues that a court can only punish for contempt without the necessity of taking evidence and allowing the accused an opportunity to defend when the conduct constituting the contempt occurred in open court *i.e.,* when it was a direct contempt. The respondent asserts that the conduct that here was held to have been contemptuous, the failure to produce the child, unlike the conduct of the contemnor in *Faris* v. *Faris,* did not occur in open court but occurred outside the presence of the judge and was dependent upon evidence outside the judge's knowledge. Thus, the respondent concludes, his conduct could have at most constituted an indirect rather than a direct contempt of

court. Under these circumstances, the trial court's summary adjudication and sentencing of him, he says, violated his constitutional rights of due process as assured by the Illinois and the United States constitutions.

It is clear from the record that the conduct of the respondent that the trial court found contemptuous was his failure to produce the child rather than any conduct in the courtroom. The petitioner's position is that the proceedings here were those to punish a direct contempt of court and the respondent argues that the contempt, if any, was an indirect contempt. The classification of proceedings to punish for failure to obey a court order as direct or indirect contempt, is not without difficulty. (See Goldfarb, "The Contempt Power," pp. 70-77; *People* v. *Skar,* 30 Ill.2d 491; *People* v. *Howarth,* 415 Ill. 499; *People* v. *Gholson,* 412 Ill. 294; *Jingling* v. *Trtanj,* 99 Ill. App. 2d 64, and *People ex rel. McKee* v. *McKee,* 338 Ill. App. 654.) However, whether the contempt found here is to be considered direct or indirect is not controlling, since it is apparent from the record it was necessary for the trial court to secure and consider extrinsic evidence as to matters not within its knowledge to determine whether the defendant wilfully disobeyed the command of the court. Under such circumstances due process of law required that the contempt be established by evidence and that the respondent be given reasonable opportunity to defend. *People* v. *Skar,* 30 Ill.2d 491; *People* v. *Gholson,* 412 Ill. 294.

As this court observed in *People* v. *Howarth,* 415 Ill. 499 at 508-509: "Where a direct contempt is committed in open court it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. However, when a direct contempt occurs in a constituent part of a court and not in the immediate presence of the judge as is the case here, extrinsic

evidence is essential to substantiate the charge. (*In re Estate of Kelly,* 365 Ill. 174.) When the contempt is not an apparent one and its demonstration depends upon the proof of facts of which the court has no judicial notice, due process requires a citation in order that defendant may meet and refute the charges."

The respondent's declared position was that he was unable to comply with the court's order. Clearly if the respondent was unable to obey the court's order without fault on his part he was not guilty of contempt. (*Tudor* v. *Firebaugh,* 364 Ill. 283, 288; *O'Callaghan* v. *O'Callaghan,* 69 Ill. 552, 554.) He represented to the court by his motion that he had attempted to comply with its order but was prohibited from doing so by the laws of Puerto Rico and was entitled to a hearing to determine the truth of this representation. The respondent should have been given opportunity to show that he was without the power to return the child and obey the order of the circuit court. The judgment of the trial court must be vacated and the cause remanded so that a hearing may be conducted to determine whether the respondent wilfully disobeyed the court's direction.

*Faris* v. *Faris,* 35 Ill.2d 305, which the petitioner cites to support the summary adjudication and sentence for contempt is inapplicable to this case. In *Faris,* which also concerned a writ of *habeas corpus* directing the production of a minor child in court, the respondent was asked by the court: "Do you intend to bring this child in here or not?" He replied: "Your Honor, the answer is 'No,' I do not intend to bring the child to Illinois until I am instructed to do so by my attorney." The court punished the respondent for his statement to the court that he would not comply with its order and not for his failure to produce the child. We said at page 310: "In the present case respondent did not state that he *could not* produce the child; rather, he said he *would*

*not* do so. This constituted a defiance of the court, committed in its presence, which the trial court adjudged to be contempt."

In view of the remandment of the case, it is unnecessary to consider the respondent's other claims of error.

The judgment of the circuit court of Cook County is vacated and the cause remanded for further proceedings consistent with this opinion.

*Vacated and remanded.*