(No. 43486.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ALBERT JASHUNSKY *et al.,* Appellants.

*Opinion filed March 30, 1972.*

MARVIN D. MICHAELS, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and HENRY A. HAUSER, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

On August 12, 1970, the defendants, Albert Jashunsky, Carol Caref, Jerome H. Harris, Reynold E. Sodini, Arthur Hirsch, Randee Ascher, Dennis Johnson, Jaroslaw Salak, Kathleen A. Lindsley, and Marla Lowenthal were adjudged to have been in direct contempt of the circuit court of Cook County. Sentences of four months were imposed on Jashunsky and Caref, and the other defendants received sentences of 30 days. On this appeal they claim basically that they were denied the due process of law assured by the constitutions of the United States and of Illinois.

The defendants were in the courtroom of Judge Meyer Goldstein on the morning of August 12, 1970. Some were there because they were defendants in a criminal case on

that day's call, which had arisen from a disturbance at the University of Illinois Circle Campus. The other defendants were present as prospective witnesses in the case or as spectators. When the court session opened, the court admonished against any disorders in the courtroom. However, as the criminal case was called, Caref began shouting. The court directed her to be quiet, and, when she continued to shout, ordered the bailiff to remove her from the courtroom. She resisted the bailiff's attempt to remove her and other bailiffs came to his assistance. At that, other persons in the courtroom came to the aid of Caref and a melee broke out. Bailiffs, with the assistance of Chicago police officers and deputy sheriffs, cleared the courtroom at the direction of the judge and placed the defendants under arrest. The record does not show the interval between the disturbances and the beginning of contempt proceedings but it does show that the misconduct and the proceedings were on the same day and there is no contention that anything other than a short recess intervened. The defendants were charged with direct contempt, and not guilty pleas were accepted by the court from each of the defendants. In every case except that of Jashunsky, the court heard testimony presented by police officers and deputies who had been in the courtroom at the time of the disturbance. The witnesses were examined by an assistant State's Attorney who had been present in the courtroom. It appears that in Jashunsky's case the court intended to hear the testimony of a police officer and that of Jashunsky. The court said it would hear any witnesses Jashunsky had to offer even though, he explained: "I personally saw Albert Jashunsky grab—lean over the rail and strike the officer. *** I can send you [Jashunsky] to jail immediately." However, when Jashunsky interrupted a police officer witness by demanding an attorney and declaring his innocence, the court stopped the hearing, declaring that Jashunsky's conduct was "contemptuous and in utter disregard of the judicial process." He was

found guilty of direct contempt of court. The other defendants were permitted to testify at their individual hearings and some of them cross-examined witnesses who appeared against them. However, their requests to present witnesses or to obtain continuances were denied. At Caref's hearing the court, after hearing the testimony of a police officer, stated that it had seen Caref begin the disturbance by shouting and ignoring the court's order for silence and had seen her resisting officers who were endeavoring to escort her from the courtroom. The record shows that the trial court itself had personally observed only the conduct of Jashunsky and Caref; it shows that the court had to rely on the testimony of witnesses for evidence of the conduct of the other defendants during the melee.

It appears to be the position of the defendants that they were denied due process because they were summarily punished for direct contempt. If they were guilty of any contempt, it was indirect contempt, they argue, and they were entitled to a formal hearing.

We have said: "Contempt of court has been generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice, or to derogate from its authority or dignity, or bring the administration of law into disrepute." *In re Estate of Melody (1969), 42 Ill.2d 451, 452.*

This court discussed direct and indirect contempts in *People v. Howarth (1953), 415 Ill. 499,* observing: "A direct criminal contempt is one which takes place in the very presence of the judge, making all of the elements of the offense matters within the personal knowledge of the judge and tending directly to obstruct and prevent the administration of justice, and includes acts committed in an integral part of the court although out of the physical presence of the judge. An indirect contempt is one which occurs out of the presence of the judge and is therefore dependent for its proof upon evidence of some kind or

upon facts of which the court has no judicial notice. *(People v. Harrison 403 Ill. 320.)* The mere filing with the clerk of the court of any document containing contemptuous matter is sufficient to constitute direct contempt. *(In re Estate of Kelly, 365 Ill. 174.)* \*\*\* It has been held that even though the charge be of direct contempt, that fact does not entirely preclude the judge from hearing evidence to fully establish the direct contempt. *(People v. Harrison, 403 Ill. 320.)* Where a direct contempt is committed in open court it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. However, when a direct contempt occurs in a constituent part of a court and not in the immediate presence of the judge as is the case here, extrinsic evidence is essential to substantiate the charge. *(In re Estate of Kelly, 365 Ill. 174.)* When the contempt is not an apparent one and its demonstration depends upon the proof of facts of which the court has no judicial notice, due process requires a citation in order that defendant may meet and refute the charges." (415 Ill. 499, 508-509.) This last proposition was also discussed in *People ex rel. Melendez v. Melendez (1971), 47 Ill.2d 383.* "[W]hether the contempt found here is to be considered direct or indirect is not controlling, since it is apparent from the record it was necessary for the trial court to secure and consider extrinsic evidence as to matters not within its knowledge to determine whether the defendant wilfully disobeyed the command of the court. Under such circumstances due process of law required that the contempt be established by evidence and that the respondent be given reasonable opportunity to defend. *People v. Skar, 30 Ill.2d 491; People v. Gholson, 412 Ill. 294.* " 47 Ill.2d 383, 386.

Without considering whether the alleged contempt involved was direct or indirect, the Supreme Court recently, in *Johnson v. Mississippi (1971), 403 U.S. 212,*

*29 L.Ed.2d 423, 91 S.Ct. 1778,* quoted from an earlier holding by it in *In re Oliver, 333 U.S. 257, 275-276, 92 L.Ed. 682, 695, 68 S.Ct. 499, 509,* and said: "If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about those essential elements, due process requires *** that the accused be accorded notice and a fair hearing ***." The court went on to say: "It would, therefore, seem that a fair hearing would entail the opportunity to show that the version of the event related to the judge was inaccurate, misleading, or incomplete." 403 U.S. 212, 215, 29 L.Ed.2d 423, 426, 91 S.Ct. 1778.

Measuring by these standards it cannot be validly said that Caref and Jashunsky were deprived of due process of law. It is clear from the record that the court personally observed the contemptuous conduct of these defendants and the record describes fully and factually their contumacious acts. As to the other defendants, however, the record shows that it was necessary for the court to secure and consider extrinsic evidence to determine whether those defendants had been guilty of contempt of the court. The proceedings against these defendants did not meet the requirements of due process and remandment will be necessary. *(People ex rel. Melendez v. Melendez (1971), 47 Ill.2d 383; People v. Gholson (1952), 412 Ill. 294, 301; Durkin v. Hey (1941), 376 Ill. 292.)* Being given only the opportunity to testify in one's own behalf and to cross-examine witnesses falls short of satisfying the requirement that the accused by given an opportunity to be heard and to defend. *People ex rel. Melendez v. Melendez (1971), 47 Ill.2d 383; People v. Gholson (1952), 412 Ill. 294, 301; Durkin v. Hey (1941), 376 Ill. 292.*

Another contention, which we need consider only as to Jashunsky and Caref, is that the order of the trial court is inadequate because it does not set forth the facts of the contempt fully and certainly so as to demonstrate on

review that the trial court was warranted in entering the order of contempt.

This court noted in *People v. Loughran (1954), 2 Ill.2d 258, 263:* "In a direct criminal contempt proceeding, that is, for contempts committed in the presence of the judge, in court, which he observes and has personal knowledge of, no formal charge is filed and no plea, issue or trial is required. *(In re Terry, 128 U.S. 289, 32 L.Ed. 405, 9 S.Ct. 77.)* The contempt having been committed in the presence of the court, evidence is unnecessary and no record is made. *(People ex rel. Owens v. Hogan, 256 Ill. 496.)* However, the accused has a right of appeal, and it is, therefore, necessary for the court to enter a written order setting forth fully and clearly the facts out of which the contempt arose so that the reviewing court may determine if the committing court had jurisdiction to enter the order. *(People v. Rongetti, 344 Ill. 107.)* All the essential facts must be fully set forth and no part thereof can be supplied by presumptions or inference *(People v. Tavernier, 384 Ill. 388),* and no facts which did not occur in the presence of the court should be taken into consideration by the court in adjudging guilt or in fixing the punishment. *People v. Rongetti, 344 Ill. 107."* The reason underlying this is, of course, that often in direct contempt cases there is no record of proceedings for examination on review, as there has been no formal hearing. The reviewing court has no source of information other than the trial court's order adjudging contempt. But when there is a report of proceedings, it, as well as the order of the trial court, will be considered by the reviewing court in weighing the propriety of the order of contempt. We expressed this in *People v. Tomashevsky (1971), 48 Ill.2d 559,* commenting: "Our appellate courts have held that the court on review of a direct contempt proceeding may look to the report of proceedings in addition to the contempt order to determine whether the contempt order was correct *(In re Dunagan, 80 Ill.App.2d 117, 123; People ex rel. Morgan v.*

*Mulliken, 41 Ill.App.2d 282, 283);* and they have further held that since the report of the proceedings reflects what actually occurred in open court, the findings in the order of contempt, if in conflict with the report of the proceedings, do not control; and that it is only where there is no report of proceedings that the reviewing court will not go behind the order but is bound to assume that the findings are correct. *(People v. White, 8 Ill.App.2d 428, 434.)"* 48 Ill.2d 559, 564.

In the case of Jashunsky the order of the trial court states only the conclusions that his conduct "disrupted the orderly flow of the administration of justice, disrupted the courtroom proceedings, was an affront upon the dignity of [the] court *** " and the sentence imposed. But from the transcript of the proceedings it is clear that the trial court saw Jashunsky strike the officer and that the trial court told Jashunsky that he could send him to jail immediately. The transcript then shows Jashunsky's interference with the hearing and the trial court's halting the hearing, finding him guilty of direct contempt and declaring that his conduct had been "contemptuous and in utter disregard of the judicial process." In the case of Caref both the order and the transcript set forth that the trial court observed her shouting, that she refused the court's order to be quiet and that she struggled with the officers when they were ordered by the court to escort her from the courtroom. The facts which led to the judgments of contempt were sufficiently set forth to permit us on this review to determine that the trial court was warranted in entering its judgments of contempt.

The last contention is that the trial judge should have recused himself in favor of another judge because, as was the case in *Mayberry v. Pennsylvania (1971), 400 U.S. 455, 27 L.Ed.2d 532, 91 S.Ct. 499,* he had become "personally embroiled" in the contumacious events. However, the occurrence in *Mayberry* was essentially dissimilar from what happened here. There the trial judge was grossly

and repeatedly reviled as a person by the defendant throughout the course of a 21-day trial. At the conclusion of trial the judge, after finding that the defendant had committed one or more contempts on 11 of the 21 days, sentenced him to a total of 11 to 22 years. The Supreme Court judged that the trial judge had become "embroiled in a running, bitter controversy" and should have had another judge consider the contempts. There was disruptive and contemptuous conduct here, but there were not personal insults "apt to strike 'at the most vulnerable and human qualities of a judge's temperament.' " *(Mayberry v. Pennsylvania, 400 U.S. 455, 466, 27 L.Ed.2d 532, 540, 91 S.Ct. 499; Bloom v. Illinois, 391 U.S. 194, 202, 2 L.Ed.2d 522, 529.)* In *Mayberry* the court, citing *Illinois v. Allen (1970), 397 U.S. 337, 25 L.Ed.2d 353, 90 S.Ct. 1057,* said that the trial judge "could, with propriety, have instantly acted, holding petitioner in contempt ***." *(Mayberry v. Pennsylvania, 400 U.S. 455, 463, 27 L.Ed.2d 532, 539, 91 S.Ct. 499.)* This was the course taken by the trial court here.

There was no impropriety in the trial judge's not recusing himself following the contemptuous incidents.

For the reasons given, the judgments of the circuit court of Cook County are affirmed as to the defendants Jashunsky and Caref; the judgments as to the other defendants are vacated and those causes are remanded to the circuit court for further proceedings consistent with this opinion.

> *Judgments affirmed as to Jashunsky and Caref;*
> *vacated and remanded as to other defendants.*