# Illinois Official Reports

## Appellate Court

---

***People v. Perez*, 2014 IL App (3d) 120978**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. VALERIE PEREZ, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0978 |
| Filed | October 1, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court reversed respondent's conviction for indirect criminal contempt based on a profane remark she made in the hallway outside a courtroom where she had been waiting to appear on a speeding ticket and the remark expressed her feelings about the judge's decision to take a recess, since the State did not establish respondent's guilt beyond a reasonable doubt, especially when there was no evidence respondent intended to embarrass the judge, she did not use the judge's name or communicate directly to her, and courts have held that concern for the dignity and reputation of the courts does not justify the punishment as criminal contempt of criticism of a judge or a judicial decision. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-CC-22; the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Mario Kladis, of State Appellate Defender's Office, of Ottawa, for appellant. |
|---|---|
| | James Glasgow, State's Attorney, of Joliet (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion. Presiding Justice Lytton concurred in the judgment and opinion. Justice Holdridge specially concurred, with opinion. |
|---|---|

## OPINION

¶ 1    Respondent, Valerie Perez, was in traffic court waiting to appear on a speeding ticket. When the court took a recess, respondent exited the courtroom and was overheard by a bailiff saying, "I waited all fucking morning and now she takes a break." After the bailiff relayed the comment to the court, the trial judge returned to the bench and instructed the State to prepare and file a petition for contempt. The court denied the defense request for a short continuance to prepare for trial and presided over a hearing on the same date as the alleged misconduct. After finding respondent guilty of indirect criminal contempt, the court sentenced respondent to serve eight days in custody. Respondent appeals. We reverse.

¶ 2                                         FACTS

¶ 3    On September 28, 2012, respondent was in the Will County courthouse waiting to appear on a speeding ticket in courtroom 304. Once the court announced it would be taking a recess, respondent left the courtroom. Thereafter, Bev Richardson, a bailiff assigned to another courtroom, courtroom 302, contacted the judge and told the court that respondent purportedly used profane language in the courthouse hallway while commenting on the court's decision to take a break.

¶ 4    Based on the information communicated to the court by bailiff Richardson, the court returned to the bench and instructed the State to prepare a petition putting respondent on notice that she was being charged with indirect criminal contempt based on respondent's conduct. The prosecutor responded, "Judge, normally I can't give this to the Court. I don't know what the person said. I'm sorry." The court further advised the prosecutor that he was not required to have personal knowledge of the statement in order to draft the contempt petition.

¶ 5    The record contains an unsigned, handwritten document written on a blank form entitled "COURT ORDER." The entire handwritten petition is set forth below:

> "State files a petition for adjudication for indirect criminal contempt, and order[s] her to show good cause as to why she should not be held in indirect criminal contempt of court. *** Conduct alleged is the Defendant swore outside the courtroom after the Court had taken a recess, per Bailiff Bev Richardson. The witness indicated that the defendant said 'now she takes a break after I've been waiting all fucking morning.' "

¶ 6 With respondent present in the courtroom, defense counsel requested a continuance for counsel to research the law, answer the charge, prepare potential evidence, and investigate potential witnesses. Defense counsel stated respondent was entitled to be advised of the charge and the range of penalties, to benefit from compulsory process to present witnesses, and to answer the charges. Defense counsel concluded her response by stating, "It's a criminal matter like any other."

¶ 7 The court denied the request to schedule the hearing for another date. In so doing, the court said, "This is basically indirect criminal contempt. This is not criminal in nature. This is basically civil in nature. So we are going to hearing today. Call your first witness."

¶ 8 The State called bailiff Richardson, who testified she was working as a bailiff in another courtroom in the Will County courthouse that morning. According to Richardson, at around 11:30 a.m., she was standing in the hallway outside of the courtrooms when respondent exited a courtroom, entered the hallway, and loudly announced, "I waited all fucking morning and now she takes a break and I'm tired of waiting." Richardson continued, "But then all the way down the hall she was using the word F, all the way down. People at the other end were looking at her. And I told her she could not do that in this building." Richardson testified that after she told respondent not to use this type of language, "[respondent] said a few more words and she simmered down because I went to tell the Judge." On cross-examination, Richardson testified that respondent did not direct her language toward court personnel or any person in particular. The defense called no witnesses.

¶ 9 Without allowing either attorney an opportunity for closing arguments, the court found respondent guilty of indirect criminal contempt. When the court asked the prosecutor for a sentencing recommendation, defense counsel interjected by asking if she could "make a record for argument, Judge." The court indicated it first would entertain the State's recommendation for sentencing.

¶ 10 Following the State's recitation of respondent's lack of criminal history, defense counsel argued the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. Counsel emphasized that her client did not direct her language toward anyone in particular and did not disrupt any court proceedings. When defense counsel began to conclude her closing argument, the following exchange took place between the court and defense counsel:

"[Defense counsel]: *** And so I would ask the Court–I don't believe it's been proven beyond a reasonable doubt that she has committed indirect criminal contempt.

THE COURT: The Court's understanding is preponderance of the evidence.

[Defense Counsel]: I believe it is beyond a reasonable doubt, Judge.

THE COURT: Okay. Well, that's because you are looking at it from a criminal [perspective]. This is a quasi criminal case. It's civil in nature, and the standard here is the preponderance of the evidence. In other words, she doesn't do something that she was told to do. This was an outburst, and that's the way I see it."

¶ 11 The court made the following observations before sentencing respondent to serve eight days in jail, with day-for-day credit:

"It was disruptive to my court and the administration of justice because I had to go and stop whatever that I was doing in order to–and I had to get back in here and I had two hearings in order to hear about the fact that [respondent] felt like she was inconvenienced once I took a break. I had 115 cases on my call. ***

And the words that were used were very disrespectful to what I try to do here each and every day. *** I find you in indirect–well, it's criminal contempt. If you want to say beyond a reasonable doubt, beyond a reasonable doubt if that's the standard, we will find that beyond a reasonable doubt."

¶ 12 Respondent filed a timely motion for a new trial alleging several errors, including: (1) the denial of her rights to a fair trial, due process, and equal protection; (2) insufficient notice of the contempt hearing; (3) the improper shifting of the burden of proof to her to show cause; (4) the denial of an opportunity to answer the charge by conducting discovery, seeking witnesses, and conducting research prior to the hearing; (5) the failure of the evidence to show she was guilty beyond a reasonable doubt; and (6) violation of her first amendment rights by the court's finding of contempt. The court denied the motion for new trial.

¶ 13 Respondent appeals.

¶ 14 ANALYSIS

¶ 15 On appeal, respondent raises two issues. First, she argues the finding of guilt must be reversed because the evidence was insufficient to prove her guilty of indirect criminal contempt beyond a reasonable doubt. Alternatively, if this court concludes the evidence was sufficient, respondent argues the judgment should be vacated and the matter remanded for a new trial because the trial court violated her constitutional right to procedural due process on several grounds.

¶ 16 The State agrees the proceedings may have been procedurally flawed, but submits the evidence was sufficient to support the allegation of indirect criminal contempt. Consequently, the State contends the matter should be remanded for a new trial.

¶ 17 For purposes of this appeal, the parties agree respondent was convicted of, and sentenced for, criminal, rather than civil, contempt. Criminal contempt arises from "conduct that is calculated to impede, embarrass, or obstruct the court in its administration of justice or derogate from the court's authority or dignity, or to bring the administration of the law into disrepute." *People v. Ernest*, 141 Ill. 2d 412, 421 (1990).

¶ 18 Direct criminal contempt involves a defiant or disrespectful verbal or nonverbal act which takes place in the courtroom and is witnessed by the judge. *People v. Jashunsky*, 51 Ill. 2d 220, 223 (1972). Neither a formal charge nor an evidentiary hearing must precede a hearing on direct criminal contempt because the misconduct was actually observed by the court and the relevant facts lie within the court's personal knowledge. See *People v. L.A.S.*, 111 Ill. 2d 539, 543 (1986) ("Direct criminal contempt may be found and punished summarily because all elements are before the court and, therefore, come within its own immediate knowledge.").

¶ 19 Unlike direct criminal contempt, *indirect* criminal contempt is based on conduct the court has not personally witnessed. Therefore, indirect criminal contempt should not be adjudicated in a summary proceeding initiated by the judge. Instead, indirect criminal contempt proceedings are initiated by a petitioner's written request for an adjudication of indirect criminal contempt.

¶ 20 A charge of indirect criminal contempt gives rise to similar procedural safeguards as those required in criminal proceedings. *People v. Lindsey*, 199 Ill. 2d 460, 471 (2002). For example, a respondent in an indirect criminal contempt proceeding has the right to be advised of the nature of the charge, to be presumed innocent, to require proof beyond a reasonable doubt, and

to invoke the privilege against self-incrimination. *People v. Covington*, 395 Ill. App. 3d 996, 1007 (2009).

¶ 21 Typically, a routine petition requesting the adjudication of indirect criminal contempt is based on an assertion that the accused was aware of a valid court order and willfully ignored the mandates of the court order. See, *e.g.*, *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL 113482. In unusual situations, an allegation of indirect criminal contempt may be levied against the accused for a verbal or nonverbal act that was allegedly disrespectful to the court's authority, but not witnessed by the judge, rather than a violation of an existing court order. See, *e.g.*, *In re Marriage of Madary*, 166 Ill. App. 3d 103 (1988) (respondent guilty of indirect criminal contempt for spitting on the petitioner while exiting the courtroom).

¶ 22 In this case, the trial court seemed to recognize that respondent's verbal outburst during a court recess could not be summarily adjudicated as *direct* criminal contempt because the court did not observe the alleged contemptuous conduct at issue. See *Jashunsky*, 51 Ill. 2d at 223. Consequently, after learning about respondent's conduct from bailiff Richardson, the court returned to the bench and instructed the prosecutor to prepare a charging instrument for indirect criminal contempt. The court then directed the prosecutor to provide respondent with notice by delivering a copy of the petition to respondent's counsel. In spite of this notice by written petition, the State concedes multiple other due process difficulties may be present in this record warranting, at the very least, a new hearing. We agree.

¶ 23 First, the case law provides that "a petition initiating indirect criminal contempt proceedings ought not have the title 'Petition for Rule To Show Cause,'" since this language applies only in proceedings for indirect *civil* contempt and impermissibly shifts the burden of proof to respondent. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 58-59 (1990). In fact, the inartfully drafted petition prepared by the prosecutor directed respondent to "show cause" and created a great deal of confusion for the court concerning the proper burden of proof.

¶ 24 Second, the court's decision to deny defense counsel's request for a continuance creates serious due process concerns. After denying the request for a continuance, without inquiring whether the State objected to the request, the court held a hearing on the merits on the same day as the alleged contemptuous act. This decision by the court may have deprived respondent of her due process right to have notice of the indirect criminal contempt hearing "within a reasonable time in advance of the hearing." *Betts*, 200 Ill. App. 3d at 53.

¶ 25 In addition, the record reveals the State's only witness spoke directly to the court about the incident prior to the hearing. We respectfully suggest a judge in this situation may consider voluntary recusal after discussing the incident with an eyewitness. See Ill. S. Ct. R. 61 (eff. Oct. 15, 1993); see also *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971) (Due process requires another judge to determine the issue of contempt if the judicial target of the verbal commentary becomes "personally embroiled" in the conflict. (Internal quotation marks omitted.)).

¶ 26 Yet, in spite of the procedural due process irregularities identified above, the sufficiency of the evidence dictates the appropriate remedy on appeal. As the State argues, if the evidence was sufficient to support the court's finding of indirect criminal contempt, the proper remedy requires this court to vacate respondent's conviction and remand for further proceedings, allowing for procedural due process. See *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). However, if the evidence was not sufficient to establish indirect criminal contempt, then we must reverse respondent's conviction outright, based on the principles of double jeopardy. *Id.*

¶ 27    On appeal, the test for determining the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the charge beyond a reasonable doubt, viewing the evidence in the light most favorable to the State. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). We first consider the court's findings of fact.

¶ 28    In this case, the trial judge found "the words that were used were very disrespectful to what I try to do here each and every day." As previously stated, a verbal or nonverbal act may qualify as an act of indirect criminal contempt in certain situations. Based on the judge's remark, it appears the court found respondent intended to embarrass the judge or bring her method of the administration of the law into disrepute.

¶ 29    Viewing respondent's words in the light most favorable to the State, we are unable to conclude the evidence proved respondent intended to embarrass the judge, since respondent did not communicate this statement directly to the judge or identify the judge by name while in the hallway. In addition, the bailiff's testimony established respondent did not use profanity when referring to the judge as "she." Instead, respondent complained the respondent was tired of waiting all "f*** morning." Since the bailiff testified respondent entered the hallway after the court recessed, at 11:30 a.m., there seems to be an element of truthfulness to respondent's declaration and verbalized frustration. These remarks about the additional delay resulting from the recess may constitute protected speech under the first amendment. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 272-73 (1964) ("[T]his Court has held that concern for the dignity and reputation of the courts does not justify the punishment as criminal contempt of criticism of the judge or his decision.").

¶ 30    After the State rested its case, the court seemed to make another finding when it announced, "In other words, she [did not] do something that she was told to do. This was an outburst, and that's the way I see it." The record on appeal does not support the court's finding the outburst took place after respondent did not "do something that she was told to do."

¶ 31    In this case, the petitioner did not allege respondent disobeyed a court order on the date in question. Further, the State did not present any evidence of the existence of a court order requiring respondent to behave in a certain fashion in the hallway. Finally, the bailiff testified that once she told respondent not to use profanity, respondent "simmered" down. Hence, the evidence did not establish respondent disobeyed the directive of the court or an officer of the court on the day in question.

¶ 32    Consequently, viewing the evidence in the light most favorable to the State after considering the multiple ways a respondent may commit indirect criminal contempt, we conclude the State's evidence did not establish respondent was guilty of indirect criminal contempt beyond a reasonable doubt. Accordingly, we reverse respondent's conviction.

¶ 33                                    CONCLUSION

¶ 34    The judgment of the circuit court of Will County is reversed.

¶ 35    Reversed.

¶ 36    JUSTICE HOLDRIDGE, specially concurring.

¶ 37    This is a straightforward case. The only thing we need to decide is whether, taken in the light most favorable to the State, the evidence was sufficient to sustain a conviction for indirect

criminal contempt. Like the majority, I believe that it was not. I would reverse the defendant's conviction on that basis alone. I find it unnecessary to address any facts or issues relating to procedural due process.