**The People of the State of Illinois, Defendant in Error, v. William G. Anderson, Plaintiff in Error.**

**Gen. No. 36,482.**

Opinion filed October 10, 1933.

F. L. BARNETT and RICHARD E. WESTBROOKS, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, GRENVILLE BEARDSLEY and ALBERT WOLL, Assistant State's Attorneys, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Defendant, William G. Anderson, was found guilty of an alleged direct contempt of court, and was sentenced to serve a term of imprisonment of six months in the county jail.

The judgment order finds that on February 23, 1932, the case of *People v. Hall* came on for hearing before the court on an amended information filed on January 21, 1932, which charged the defendant with infractions of sections 41 and 41a of the Motor Vehicles Law of the State, Cahill's St. ch. 95a, ¶¶ 42 and 42(1); that on February 23, 1932, the court, after hearing the testimony of witnesses, found the defendant guilty as charged in the information, and sentenced him to ninety days in the Bridewell; that the amended information charged the defendant with infractions of sections 41 and 41a, but the original information filed in the cause did not so charge; that a writ of error was sued out of the Appellate Court by the defendant and that a transcript of the record in the cause was procured from the clerk of said municipal court "by, or on behalf of said Hall, and delivered to the defendant William G. Anderson; . . . about April 5, 1932, which said transcript was thereafter filed in the said Appellate Court . . . by said Anderson . . . acting as the attorney for the said Hall . . . . That Anderson . . . is an attorney . . . and an officer of this Court. That subsequent to the delivery of said transcript . . . to Anderson and prior to the time the same was filed in the Appellate Court Anderson altered or caused said transcript to be altered and changed, by transposing

the original and the amended informations in said cause so that said transcript did not speak the truth but was false and fraudulent in that by said transcript it was thereby represented that the defendant . . . had been tried . . . on the original information . . . . That said Anderson knowingly, wilfully and fraudulently presented said forged and altered transcript to the said Appellate Court . . . on April 11, 1932, and then and thereby falsely represented to said Court that said transcript so presented by him to said Court was a true and correct transcript of the proceedings in said cause in this Court. That when Anderson procured said transcript from the Clerk of this Court and . . . fraudulently changed or caused to be changed from their proper places in said transcript the original and amended informations . . . and presented the said transcript to the said Appellate Court as so altered and changed Anderson was then and thereby guilty of direct contempt of this Court. And the Court doth find that the said Anderson . . . did in the manner aforesaid, contemptuously impede, interrupt, harass, obstruct and interfere with this Court in the due administration of justice. *And it further appearing to the Court that on November 11, 1932, while this Court was in session, and had under investigation the conduct of the said Anderson in changing the records as aforesaid in said cause, the said Anderson was called and sworn and testified as a witness in his own behalf and as such witness stated that he did not order said transcript in said criminal proceeding from the Clerk of this Court, but that the same was delivered to him by the defendant, Hall, and thereafter and on November 17, 1932, to which time said investigation was continued by this Court, said Anderson again being called as a witness, under oath stated in open Court while said Court was in session that he went with other persons to the Clerk's office of*

*the Municipal Court and there ordered said transcript and that the same was afterwards delivered to him by one Kelly in the presence of said Hall, and the said Anderson thereby admitted to the Court that he, said Anderson, had been guilty of deceiving the Court by making the statement hereinbefore mentioned on November 11, 1932, that he did not order said record in said criminal proceeding from the Clerk of this Court as aforesaid, and that the transcript was delivered to him by said Hall. The Court finds that said Anderson did thereby by the deceit contemptuously impede, interrupt, harass, obstruct and interfere with this Court in the due administration of justice.* And the Court further finds that on November 11, 1932, Anderson, under oath, during said hearing before this Court did testify that said transcript in said case of Hall was in his, said Anderson's, possession for about a week or ten days immediately prior to April 11, 1932, at which date the same was filed in the Appellate Court . . . by him, said Anderson, and that he examined every word in the said transcript at said time, and Anderson then and there on said November 11th, falsely stated under oath as aforesaid to this Court that when he received said transcript from Hall that the copies of the original and amended informations were in the same place in said transcript at the time he, said Anderson, received it as they were when he filed the same in said Appellate Court; and further then and there falsely stated, under oath, as aforesaid to this Court that he did not know at the time he filed the same in said Appellate Court that the two informations were displaced in said transcript so that the amended information appeared therein as the original information and the original information appeared therein as the amended information; and the Court further finds that Anderson did then know that the said informations were so displaced in said transcript. That it was then

and there the duty of Anderson as an officer of this Court to call the attention of this Court thereto to the end that a truthful record might be presented to said Appellate Court in said cause; that Anderson wholly failed so to do, but on the contrary concealed from it the fact that a false transcript of the record in said cause was so presented to said Appellate Court; and on said false transcript of said record Anderson secured a reversal of said judgment of this Court in said cause of People of the State of Illinois against said Hall. That upon an examination of said false transcript similar to the one Anderson admits having made as aforesaid at the time the same was in his possession as aforesaid (which examination has been made by this Court) it is apparent that the two informations are displaced as aforesaid and said transcript could not have been examined by Anderson without his becoming aware thereof. Both the original and amended informations appear therein to have been filed on January 21, 1932, while the cause was pending before another branch of said Municipal Court than the one presided over by this Court; the case did not come before this Court until February 23, 1932; at that time this Court signed the statement attached to the amended information that he had examined the same and found it sufficient and fixed bail therein at the sum of $1,000, and while it is not stamped or marked as the amended information such endorsement by the Court is sufficient to identify it as the information upon which Hall was tried on February 23, 1932, before this Court; and said transcript of record has other unmistakable evidence therein by which it would be apparent to Anderson that the said informations were displaced in said transcript which would not appear in a printed abstract thereof.'' (Italics ours.) The order then recites that the court finds Anderson ''guilty of direct and criminal contempt of this Court in open

Court and it is adjudged by the Court that the said William G. Anderson . . . is guilty of direct contempt of this Court in open Court,'' and then follows the sentence.

Counsel for defendant, in support of their contention that the order is void, argue, *inter alia,* that ''the alleged 'direct contempt' charged against defendant in the order of commitment, is predicated on testimony given by him before Judge Green on November 11 and 17, 1932, at a hearing held by Judge Green, concerning the correctness of the common law record prepared by the clerk of the Municipal Court and by him certified to be 'full, true, complete and correct.' Even assuming that defendant gave false testimony in answer to questions propounded to him (which we deny), Judge Green could not say that such answers were untrue and false, unless Judge Green had personal knowledge of the subject matter, or unless defendant admitted in open court, that his testimony was false, and it was error to hear oral testimony contradictory of testimony offered by defendant, denying under oath that he had changed, or caused to be changed, the common law record delivered to him, as charged in the order of commitment.''

''A direct contempt consists of something done or omitted to be done in the presence of the court tending to impede or interrupt its proceedings or lessen its dignity. In such case the contempt may be punished summarily and without any preliminary affidavit, process or interrogatory. (*Tolman v. Jones,* 114 Ill. 147; *People v. Gard,* 259 id. 238; *People v. Cochrane, supra* [307 Ill. 126].) Constructive contempt consists of an act done, not in the presence of the court but at a distance, which tends to obstruct, interrupt, prevent or embarrass the administration of justice. (*People v. Wilson,* 64 Ill. 195.) In such case the contempt must be brought to the attention of the court by preliminary

petition supported by affidavit, notice given to the party accused, and an opportunity given him to answer the charge. *People v. McDonald,* 314 Ill. 548.'' (*People v. Sherwin,* 334 Ill. 609, 616.)

The sentence in the order was based upon the theory that the defendant was guilty of a direct contempt, and the question before us is, Do the facts, as found, constitute such an offense? In *People ex rel. Bain v. Feinberg,* 266 Ill. App. 306, the court held that a bill of exceptions has no proper place in a record brought to review a sentence imposed for a direct contempt, criminal in its nature, committed in the presence of the court; that the only matter that can properly be considered on such review is the order of the court adjudging the party to be in contempt, and that because of this rule the law requires that the contempt order set out all the facts constituting the alleged contempt, so that the reviewing court may see whether or not such facts constitute a direct contempt. (See also *People v. Hogan,* 256 Ill. 496, 499.) In *People v. Bain,* 268 Ill. App. 192, the court, after stating the rule announced in the *Feinberg* case, said: ''It follows that the order of commitment must be scrutinized carefully in order to determine whether it sets out the facts constituting the offense so fully and certainly as to show that the court was authorized to make the order.'' Counsel for The People concede, as they must, that most of the findings contained in the order could not be made the basis of a judgment for direct contempt, but they insist, however, that certain of the findings were sufficient to justify the judgment for direct contempt, and in our recital of the order we have italicized the findings upon which The People rely. The People argue that these findings evidence two contradictory statements upon a material matter made by the defendant in the presence and hearing of the court and which warrant a further finding, from defendant's

own testimony, that he committed perjury in the testimony that he gave on November 11, 1932. The People insist, and rightfully, that the trial court had an inherent power to inquire into the matter of the alleged transposing of the informations in the transcript filed in this court in the *Hall* case, and we feel impelled to say that the trial court cannot justly be criticized for his zeal in the premises. That he had the right and power to examine the defendant, an officer of the court, in reference to the very serious charge made against the latter, cannot be seriously questioned.

"The rule is well settled that perjury or false swearing may, *at least under some circumstances,* be punished as a contempt of court." (11 A. L. R. 343, and cases therein cited. Italics ours.) Section 225 of the Criminal Code of this State, Cahill's St. ch. 38, ¶ 482, provides that "every person, having taken a lawful oath . . . in any judicial proceeding, . . . who shall swear or affirm wilfully, corruptly and falsely, in a matter material to the issue or point in question, . . . shall be deemed guilty of perjury . . . ."

"Perjury is wilfully, corruptly and falsely testifying in a matter material to the issue or point in question. The testimony must be known to the witness to be false and must be intended to mislead the court or jury. (2 Wharton on Crim. Law—9th ed.—1244.)" (*People v. Glenn,* 294 Ill. 333, 336.)

In *People v. Stone,* 181 Ill. App. 475, the court, after stating that it must presume from the record that the trial court treated the alleged contempt as a direct contempt, said:

"But there is nothing in the record to disclose that the court knew that the testimony was false. In a case of direct contempt, it may act upon that of which it may take judicial notice, but it cannot judicially know that evidence is false unless at the trial it is so made to appear by the witness' own admission or perhaps

by unquestioned or incontrovertible evidence. Otherwise the court would act merely upon its belief or conclusions derived from evidence heard, and not upon matters of fact of which it had judicial cognizance, which is essential to the summary proceeding for direct contempt. . . . If false swearing in the presence of the court constitutes direct contempt, then judicial knowledge of its falsity is, in our opinion, indispensable to the right of the court to exercise authority to commit therefor, and there is nothing in the record to disclose that the court knew or could know that the testimony was false.''

In *Riley v. Wallace,* 188 Ky. 471, 475–6; *Bowles v. United States,* 44 Fed. (2d) 115, 118; *People v. Berrell,* 216 Ill. App. 341, 343, and *People v. Richman,* 222 Ill. App. 147, 148, 149, that opinion has been cited with approval. We are in accord with it.

When the findings of fact in the order are tested by the rules laid down in the *Stone* case, *supra,* it seems plain that the trial court could not judicially know that the alleged evidence given by the defendant on November 11, 1932, was false swearing or perjury. The order does not show, *save by mere conclusions,* that the defendant admitted that he had testified falsely on that date, nor does it show, ''by unquestioned or incontrovertible evidence,'' that is, by findings of that character, that he testified falsely. The most that can be determined from the findings is that the trial court believed the testimony was false or perjured. It is a matter of common knowledge that honest witnesses frequently change their testimony and it would be a dangerous doctrine to hold that merely because a witness changed his testimony upon a material point during a trial or proceeding, a trial court could determine therefrom that he had committed perjury in the first instance and adjudge him guilty of direct contempt. The trial court in the in-

stant case could not, by merely weighing the evidence of the defendant or by passing on his credibility, make his conclusions in reference thereto the basis of an order for direct contempt against him; nor could the court find him guilty of such offense solely because of evidence given by other witnesses in the investigation.

Certain well known Illinois cases bearing upon direct contempt are readily distinguishable from the instant one: In *People v. Hadesman,* 223 Ill. App. 219, the defendant, a venireman, admitted in open court that the answers he had made to counsel touching his qualifications to serve as a juror in the cause were false. In *People v. Freeman,* 256 Ill. App. 233, the defendant, Freeman, admitted that certain answers previously given by him as a witness were false. In *People v. Gard,* 259 Ill. 238, the defendant admitted, in open court, that he had deliberately deceived the court when he was questioned by the court in the matter of a writ of habeas corpus. In *People v. Sherwin, supra,* it was held that the filing of a petition by the defendant to have expunged from the records of a proceeding still before the court (but before another judge) certain findings of the judge to whom the case was originally assigned, is a direct contempt, where the petition reflects upon the honesty and integrity of the court in its findings. In *People v. Cochrane,* 307 Ill. 126, the order recited that the defendant was guilty of direct contempt of the court in refusing to answer questions during an investigation by the grand jury and in again refusing to answer the same questions in open court. In *People v. Andalman,* 346 Ill. 149, 153, the trial judge, in open court, denied Andalman leave to file certain papers and ordered his minute clerk not to file them, and later, when the matter again came up in open court, Andalman announced to the judge that he had filed the papers. In *Ex Parte Hudgings,* 249 U. S. 378, Chief Justice White, while conceding that

perjury may be the subject matter of punishment for contempt "when exceptional conditions so justify," states that if perjury could be made the subject of a punishment for contempt merely because the court entertained the opinion that a witness had testified untruthfully, "a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled."

The charge made against the defendant is a most serious one. As has been often stated, the administration of justice depends upon the integrity of judicial proceedings and records, and falsification of either obstructs and defeats justice. If the defendant is guilty of the charge he should be disbarred and prosecuted criminally. In the present case, however, we must hold that the trial judge, under the findings in question, could not judicially know that the testimony given by the defendant on November 11 was false or perjured, and that therefore the finding that the defendant was guilty of direct contempt was unwarranted.

The judgment order of the municipal court of Chicago is reversed.

*Reversed.*

SULLIVAN, P. J., and GRIDLEY, J., concur.