The People of the State of Illinois Defendant in Error,
v. Joe LaScola, Plaintiff in Error.

Gen. No. 38,213.

Opin-
ion filed November 12, 1935.   Rehearing denied November 29, 1935.

E. A. Biggs, Jr., of Chicago, for plaintiff in error.

Thomas J. Courtney, State's Attorney, for defend-
ant in error; Edward E. Wilson, John T. Gallagher
and Richard H. Devine, Assistant State's Attorneys,
of counsel.

Mr. Justice O'Connor delivered the opinion of the
court.

Joe LaScola was found to be in contempt of court
for committing perjury and for inducing another per-

son to commit perjury in a criminal case that was on hearing in the criminal court of Cook county. He was sentenced to the county jail for a term of six months and he prosecutes this writ of error.

The court having found LaScola guilty of a direct contempt, criminal in its nature, the case must be considered by this court on the order alone. *People ex rel. Bain v. Feinberg,* 266 Ill. App. 306; *People v. Bain,* 268 Ill. App. 192. This procedure was followed by the trial court.

From the order entered it appears that on February 28, 1935, the case of *People of the State of Illinois v. Nick Rogulich* was on trial before Judge Feinberg, sitting in the criminal court of Cook county. Rogulich was charged with robbery while armed with a gun, and the evidence was that the robbery took place about 4:45 o'clock in the afternoon of January 8, 1935, at a business located at 3039 South Halsted street, Chicago; that LaScola, called by the defendant in that case, testified that at the time Rogulich was charged with having committed the robbery he was employed by LaScola and was working for LaScola in his confectionery store at 227 West 31st street, Chicago.

It further appears from the order that on the afternoon of the same day, February 28, 1935, after LaScola had testified as above stated "upon process issued out of this court against . . . Joe LaScola, for contempt of this Court . . . upon inquiry to answer questions upon process heretofore issued by this Court," that LaScola was then sworn and testified that he was the same person who testified in the Rogulich case on that date, and that he did not employ Rogulich at his place of business as he had theretofore testified, and that Rogulich was not at LaScola's place of business at the time of the commission of the robbery; and the court found that "the said Joe LaScola knowingly, wilfully, corruptly and falsely testified to said matters

. . . in order to mislead the court and the jury and to aid the said Nick Rogulich in getting a verdict of not guilty.''

The order further finds that it was within the personal knowledge of the court, and occurred in his presence during the trial of Rogulich, that Martin Gusich, called and testified on behalf of Rogulich, his testimony being that Rogulich was employed by and worked for LaScola at LaScola's place of business, 227 West 31st street, Chicago. This testimony was also given on the afternoon of February 28th. Gusich, who was represented by counsel, was called by the court ''upon inquiry to answer questions upon the process heretofore issued by this Court, and being first duly sworn, stated under oath'' that he was the same person who had testified on that date in the Rogulich trial; that he then repudiated his testimony given on that trial and swore that he did not see Rogulich in LaScola's store and that he was suborned to so testify for the defendant, Nick Rogulich, by the said contemnor, Joe LaScola.

The order further finds that all of the foregoing matters occurred in open court while the court was in session and within the personal knowledge of the judge; that LaScola was present in open court in person and was ''by reason of said conduct guilty of a direct and deliberate contempt of this Court in open court,'' and it was ordered that he be confined in the county jail of Cook county for a period of six months.

From the foregoing it appears that on the afternoon of the same day that LaScola and Gusich testified for defendant Rogulich the court instituted a separate and independent inquiry as to the falsity of the testimony of these witnesses given in the Rogulich case. They were called to the witness stand and sworn, and upon examination LaScola testified that the testimony he had given on that day in the trial of the cause was

false and that he had so testified to help out Rogulich. The witness, Gusich, was then called, sworn and examined, and he testified that the testimony he had theretofore given on the hearing of the case on trial was false and that he had been induced by LaScola to give such testimony. So far as the order discloses no opportunity was given to LaScola to admit or deny the testimony given by Gusich on the inquiry.

We think it obvious that it was not within the personal knowledge of the court, as the order recites, that LaScola had testified falsely and that Gusich had been induced to give false testimony on the trial of the case against Rogulich at the solicitation of LaScola. The court was apprised of these matters by the testimony of LaScola and Gusich. This demonstrates that the contempt was not of such a character—a direct contempt—as would warrant the court in summarily punishing LaScola.

Moreover, we are further of opinion that while the court might have been satisfied that the testimony given by LaScola on the trial of the criminal case against Rogulich was false, yet the order discloses that the court had at least some doubt on the matter because LaScola was called, was sworn and testified on the inquiry instituted by the court as above stated. As said in *People v. Stone,* 181 Ill. App. 475 (477): "But there is nothing in the record to disclose that the court knew that the testimony was false. In a case of direct contempt, it may act upon that of which it may take judicial notice, but it cannot judicially know that evidence is false unless at the trial it is so made to appear by the witness' own admission or perhaps by unquestioned or incontrovertible evidence. Otherwise the court would act merely upon its belief or conclusions derived from evidence heard, and not upon matters of fact of which it had judicial cognizance, which is

essential to the summary proceeding for direct contempt. . . .

". . . If false swearing in the presence of the court constitutes direct contempt, then judicial knowledge of its falsity is, in our opinion, indispensable to the right of the court to exercise authority to commit therefor." If LaScola had admitted on cross-examination that his testimony was false when testifying in the trial of Rogulich, a different question would be presented.

A person who gives false testimony in a material matter in a cause on hearing, or who shall suborn another person to swear falsely, is deemed guilty of perjury, or subornation of perjury, and subject to be imprisoned in the penitentiary for not less than one nor more than fourteen years. (Par. 482, chap. 38, Ill. State Bar Stats. 1935.) He may be proceeded against according to law. And it is also the law that because perjury, which tends to obstruct the administration of justice, is punishable as a criminal offense is no reason why it may not also afford basis for punishment as a contempt; but that punishment for a contempt is only warranted when exceptional conditions so justify. *Ex parte Hudgings,* 249 U. S. 378; *People v. Anderson,* 272 Ill. App. 93.

In the *Hudgings* case the court said (p. 382): "Because perjury is a crime defined by law and one committing it may be tried and punished does not necessarily establish that when committed in the presence of the court it may not, when exceptional conditions so justify, be the subject-matter of a punishment for contempt."

In the *Anderson* case, 272 Ill. App. 93, the court quoted with approval the statement of this rule from 11 A. L. R., p. 343 (p. 100): "The rule is well settled that perjury or false swearing may, *at least under some circumstances,* be punished as a contempt of court." But there is some doubt whether this rule is

the law of this State. *People v. Hogan,* 256 Ill. 496. In that case one was committed to jail for an alleged contempt committed in open court without plea, issue or trial; the court, after holding that the commitment was unwarranted, said (p. 501): "It is not to be inferred because the question is not discussed, that we think a court can in any case, upon its own knowledge of the facts, punish summarily as for a contempt against the dignity of the court, a witness who has testified falsely in a cause."

In the instant case we think it apparent that the court did not know of its own knowledge that LaScola and Gusich had given false testimony in the criminal case because the court instituted a separate inquiry, called these two persons, had them sworn and examined, and from their testimony found LaScola guilty of contempt. And while the order finds—and the finding must be taken as true—that LaScola admitted he had given false testimony in the trial of the criminal case, yet it is clear that the court did not know, if such were the fact, that LaScola had suborned Gusich to testify falsely until Gusich was sworn and testified on the inquiry. When a court is said to know of its own knowledge that certain matters and things have taken place in open court before him, no testimony is required or permitted in a proceeding for a direct contempt.

For the reasons stated, the order finding Joe La-Scola guilty of contempt is reversed.

*Order reversed.*

McSurely, P. J., and Matchett, J., concur.