(No. 43514.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIAM BENNETT, Appellant.

*Opinion filed March 30, 1972.*

WARD and KLUCZYNSKI, JJ., took no part.

CARL E. MOORE and MICHAEL P. BUCKLO, of MERRIAM, MARSHALL, SHAPIRO & KLOSE, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of

Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and THEMIS N. KARNEZIS, Assistant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This appeal challenges the validity of the judgment orders of the Cook County circuit court denying a post-conviction petition, adjudging the petitioner guilty of contempt of court for admittedly false statements contained in the verified petition, imposing a six months sentence of imprisonment (consecutive to the term being served) and directing the State's Attorney to write the prison authorities recommending denial of petitioner's "good time" credit.

Petitioner William Bennett was arrested in October, 1964, on an aggravated battery charge. The victim died several weeks later, and petitioner was then charged with murder. He was originally represented by experienced, retained counsel who was subsequently appointed by the court when petitioner's family was unable to provide the additional fees requested by counsel to defend the murder charge.

Petitioner thereafter withdrew his not guilty plea, entered a plea of guilty and was sentenced to imprisonment for 14 years to 14 years and 1 day. Approximately 4½ years later, petitioner filed a *pro se* verified post-conviction petition (Ill.Rev.Stat. 1969, ch. 38, par. 122—1 *et seq.*) including the following allegations:

"11. That on May 25, 1965, his attorney told him that the State is reccomendint [*sic*] 20 to 30 years, and that the best he could do was to plead guilty and he would get not less than one year nor more than fourteen years.

"12. Lacking experience to assure himself effective legal representation in his case in advance, your petitioner relied upon the direction, advice and representation of this

court appointed attorney thereby changing and entering a plea of guilty to the Cook County Indictment General Number 64-3403."

Petitioner was returned from the penitentiary for an evidentiary hearing at which he and the attorney, who had represented him in the murder charge proceedings culminating in the plea of guilty, both testified. The contempt finding and judgment is predicated upon this cross-examination of petitioner:

"Q. What did your lawyer tell you you would possibly get, if you pled guilty?

A. Fourteen years.

Q. Now, in your sworn statement, in your affidavit, you stated that on May 26th, 1965, 'his attorney told him that the State is recommending twenty to thirty years and that the best he could do was to plead guilty,' and you could get not less than one year nor more than fourteen years. Now, what are you talking about?

A. Just what it says there, counselor.

Q. You knew that you were being charged with murder, right?

A. Right.

Q. You knew the minimum for murder was fourteen years, right?

A. Right.

Q. So then, in your affidavit, in your petition, your lawyer never told you anything about one or not less than one or more than fourteen, did he?

A. He said 'fourteen'.

Q. He didn't say less than one, did he?

A. Not less than one.

Q. He never talked to you about a manslaughter, did he, and you never talked to him about a manslaughter charge, did you?

A. Yes, I did.

Q. But he never told you one to fourteen, right?

A. He didn't say one to fourteen. He said 'fourteen'."

Petitioner also conceded on cross-examination that his attorney had discussed the advisability of fighting the case with him, that petitioner knew the difference between murder and manslaughter although "not in its entirety," that he knew he was pleading guilty to a charge of murder (he had previously completed a sentence of ten to fourteen years imposed in a murder case reduced to manslaughter), and said, "I made a mistake," in stating in his post-conviction petition that his attorney had told him he would receive a sentence of one to fourteen years.

The attorney, who had represented petitioner in the proceedings culminating in the challenged sentence, testified that he had investigated the case and found nothing sufficient to mitigate the charge and concluded that "in his [petitioner's] best interests, a plea of guilty was a proper thing"; that he had explained to his client that the minimum sentence on a murder charge was fourteen years and that the maximum could be any number of years; that he had not told petitioner the sentence he could expect because there had been no sentencing agreement; that petitioner made no complaint regarding his sentence at the time it was imposed and that the witness had believed his client to be satisfied.

At the conclusion of the testimony the judge denied the petition, stated that "the only reason you were brought back here is because the court was under the impression that you were promised a sentence that you didn't receive, and it was your sworn statement that you were promised a one to fourteen and you were given a fourteen. That's the reason you were brought back here, to have a hearing, to make certain that what commitments were made should be carried out, if that was a fact", and proceeded to inform petitioner that he had perjured

himself, was adjudged in contempt of court for that perjury, was sentenced to serve six months in the county jail at the conclusion of his prison sentence, and that this disposition was in lieu of a perjury indictment. The State's Attorney was directed to write a letter, which the court would affirm, requesting that petitioner be denied "any good time credit" because of the perjury.

Petitioner argues here that the finding of perjury and sentence for contempt were improper in view of the requirement of knowing wrongfulness for the offense of perjury and in view of petitioner's admission of the mistake; that perjury itself does not constitute contempt and that there was no showing of actual obstruction of the court; that the alleged contempt was not direct and, therefore, was not summarily punishable; that the proceedings constituted a denial of due process; and that petitioner was deprived of his right to a jury trial for a major offense.

There are numerous authorities supporting the views that false swearing may be punished as a contempt of court (Annot., 73 A.L.R. 817, supplementing annotation in 11 A.L.R. 343; 17 Am.Jur.2d, Contempt, sec. 33; *People v. Bialek (1961), 31 Ill.App.2d 281).* Likewise, it is well established that the fact that the conduct held contemptuous also constitutes a criminal offense does not preclude the contempt action. *(In re Estate of Melody (1969), 42 Ill.2d 451; People v. Bloom (1966), 35 Ill.2d 255, rev. on other grounds, Bloom v. Illinois (1968), 391 U.S. 194, 20 L.Ed.2d 522, 88 S.Ct. 1477;* and authorities above cited.) Serious constitutional questions would be raised, however, were the precise conduct held contemptuous in this case also to be made the basis of an indictment, a fact obviously in the mind of the trial judge when he stated the contempt adjudication was in lieu of a perjury indictment.

Petitioner urges that his admission during the evidentiary hearing that his allegation relating to the length of

the sentence his attorney told him he would receive was "mistaken" prevents a contempt finding since our perjury statute (Ill.Rev.Stat. 1969, ch. 38, par. 32–2(c)) provides that admission by an offender that one of contradictory statements made in the same continuous trial is false bars a perjury prosecution. While the statutory provision would be relevant in a prosecution for the criminal offense of perjury, it has, in our judgment, no application in this proceeding. The contempt judgment here rests, not on the perjury statute, but on the inherent power of a court to punish those whose conduct obstructs or interferes with the administration of justice; if petitioner's sworn allegation was false, his admission of its falsity, in our opinion, is no bar to a contempt judgment. Nor are we impressed by petitioner's argument that there is no showing that the administration of justice was actually impeded or obstructed by the false allegation. As is apparent from the trial court's explanation of the reasons for his action, and from our examination of the petition, it contained nothing necessitating an evidentiary hearing other than the statement referred to. It is, in our opinion, specious to urge that an admittedly false allegation requiring an overburdened court to issue, unnecessarily, process for the attendance of parties and witnesses and conduct a hearing does not interfere with or obstruct the administration of justice.

The contention that the contempt was indirect and therefore not summarily punishable is disposed of by our holdings in *In re Estate of Melody (1969), 42 Ill.2d 451; People v. Parker (1940), 374 Ill. 524; In re Estate of Kelly (1936), 365 Ill. 194; People v. Andalman (1931), 346 Ill. 149,* and *People v. Cochrane (1923), 307 Ill. 126.* In *Melody* we held the filing in the clerk's office of spurious documents constituted a direct contempt, and that even conduct constituting indirect contempt, when admitted, could be summarily punished. (See also, *People v. Hagopian (1951), 408 Ill. 618.)* While *People v. Harrison*

*(1949), 403 Ill. 320,* held, under the circumstances there existing, that false swearing by a witness was not a direct, and therefore summarily punishable, contempt, it is clear that this was so solely because the falsity was not known to the judge. Here, to the contrary, the judge had before him the petition containing the false allegation at the time petitioner testified otherwise and then admitted the allegation was not true. We believe, in these circumstances, the action by the trial court is supported by the cases above cited.

Since the contempt here did not consist of action or remarks directed against the trial judge, and the sentence imposed did not exceed six months, the holdings in *Mayberry v. Pennsylvania (1971), 400 U.S. 455, 27 L.Ed.2d 532, 91 S.Ct. 499,* and *Bloom v. Illinois (1968), 391 U.S. 194, 20 L.Ed.2d 522, 88 S.Ct. 1477,* are not applicable.

The letter which the court directed the State's Attorney to write recommending a denial of "good time" credit, even if written, is not binding upon the correctional authorities. However, so far as we are advised, there is no statutory or other authorization for such action by the court in this context, and we deem it the better practice to refrain from such requests of doubtful validity. That portion of the order will therefore be stricken.

It is, of course, clear that the evidence did not support the petition and that its denial was proper.

The judgment of the circuit court of Cook County is accordingly modified and affirmed.

*Judgment affirmed as modified.*

KLUCZYNSKI and WARD, JJ., took no part in the consideration or decision in this case.