THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LOUIS RANDALL, Defendant-Appellant.
First District (4th Division)　No. 78-2092

Opinion filed September 30, 1980.

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Wesley H. H. Ching, and Dale F. Weigand, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, seeking to have a bond forfeiture set aside, filed a letter with the court. The letter stated he had been hospitalized on the date of the forfeiture. The court, after examining the letter, concluded that the letter was a forgery and, after a continuance, but without granting

a hearing or receiving any evidence, found the defendant guilty of contempt and sentenced him to six months in jail. The defendant appeals, contending that the evidence did not establish his guilt beyond a reasonable doubt and that he was denied due process of law. We agree with both contentions and reverse.

The defendant was arrested and charged with two counts of burglary. He posted bond, but on December 7, 1977, failed to appear in court. The trial judge ordered the bond forfeited and a warrant for defendant's arrest was issued. Subsequently judgment was entered on the bond forfeiture. On March 28, 1978, defendant, having been arrested on the warrant issued on December 7, 1977, appeared in court. He filed a sworn petition to vacate the bond forfeiture and accompanied the petition with a photocopy of the following letter:

"Cermak Memorial Hospital
2800 South California Avenue
Chicago, Illinois 60608
Telephone 312/847-5600

MEDICAL VERIFICATION
March 22, 1978

Presiding Judge
Criminal Courts Building
2600 South California Avenue
Chicago, Illinois

Dear Sir:

Records received from this hospital from Cook County Hospital indicate that Mr. Louis Randall was entered into that hospital on December 4, 1977, to March 10, 1978, for the purpose of spinal and lower back injuries. Subject was released from Cook County Hospital on March 10, 1978 with the stipulation that he confine himself to total bed-rest for a period of two (2) weeks.

Due to the nature of this type injury, this amount of time is required to determine the success of the therapy.

His condition at this time has improved; with proper therapy we feel there should be no further complications. .

May the above mentioned information serve the Court in Mr. Randall's behalf. If additional information is needed please feel free to contact our department.

Respectfully yours,

/s/ Elisworth E. Hasbrouck, M.D.
/s/ Elisworth E. Hasbrouck, M.D."

Below the heading was a line running two thirds across the letter. Below the words "Medical Verification" was a smear apparently due to an erasure. There were smudges on the paper, especially below the typed portion of the letter.

The judge, remarking that he was not a fool, asked where the original of the letter was. The public defender responded that he presumed that the presiding judge had it. The judge then stated that the petition was entered and continued until he received the original of the letter. He added that he wanted to see some doctors and he wanted it (the letter) notarized. He stated that if the court was being presented with a phony certificate they were going to have some problems. The judge pointed out that the letter indicated that defendant had been at Cermak, the prison hospital, and defendant had not been at the prison hospital. Defendant responded that "I was in the Cook County Hospital and I got that from the social worker, see, because when I was arrested the paramedic, he wrote me up on the treatment for my back and I'm taking physical therapy at Cermak now."

The public defender had asked for 30 days to get the records from the hospitals. The court, however, set the case for April 7, 1978, 10 days later.

On April 7, 1978, the court, without benefit of a hearing, held defendant to be in direct contempt of the court due to the "patently fraudulent" nature of the letter. He pointed out that he knew from his experience relative to copying that the smudge beneath the words "Medical Verification" and underneath a portion of the address were due to an obliteration of some writing. He added that "Elisworth" is not spelled "Elisworth" but "Ellsworth" and that Ellsworth was a member of the Governing Commission of the Cook County Hospital Association but was not a member of the Cermak Hospital staff. The judge continued:

> "* * * an effort has been made to fool this court by submitting to the Court what is a patently fraudulent document, and this Court does not purport to overlook that, as such conduct on the part of any person before the court would tend to bring the administration of the law into disrepute, disrespect and disregard, and such conduct is in derogation of the majesty of the law and of the integrity and of the authority of this court.
>
> It is axiomatic in the law, of making false representation before a court and to a court, constitutes direct contempt, and for that reason even false swearing by a witness or person before a court constitutes direct contempt, and the court cannot overlook this. Such would bring this court into great disrespect, and this court

wants the world to know that this court will not stand to have disrespect and contemptuous actions like this taken before this court without actions being taken by the Court."

Upon questioning by the public defender the judge repeated:

"Counsel, the court is not a judge for no reason at all, and the court is able to discern certain things.

For instance, when a person is telling a lie; when an instrument is authentic; when it is patently non-authentic.

I have never seen a worse purported communication. And I have seen a lot of them."

He stated that his conclusion was based on the appearance of the letter, that it had some bad grammar, that unless there was a flaw in the machine, one could not get a line such as appeared on this copy below the heading. He repeated that Dr. Ellsworth's name was misspelled and that persons familiar with the operation of the Governing Commission of Cook County Hospital knew he was a member of it. He added that he would have known that the letter was fraudulent without any knowledge of Ellsworth's name since "all the court needs to do is look at the format of that, the court can tell you this is a fraudulent communication."

Upon inquiry the judge acknowledged that he did make independent inquiry at Cermak Hospital concerning Dr. Hasbrouck but stated that those determinations did not constitute the basis of his findings, the basis of his findings went back to when the communication was presented to the court.

The court in its formal order gave the following reasons for its conclusion that the letter was a forgery:

"1) Manner in which the letter head appears on the stationery above a line which line the court concluded on March 28, 1978, to have been from two pages being used on a copying machine in order to have copy from both pages imprinted a single page.

2) Medical verification which is typed in capital letters at the top right portion of the copy is typed over what the court *concluded* on March 28, 1978 to have been an eradication of some print or type which was previously on that part of the stationery before the copying.

3) The first sentence of the letter reads: 'Records received from this hospital from Cook County Hospital indicate * * *' and this court *considered* it to be *improbable* that Dr. Hasbrouck would write 'received from this hospital from Cook County Hospital' on Cermak Memorial Hospital stationery.

4) Ellsworth is both mispelled [*sic*] in the purported signature and in what purports to be the typing of the name under the signature

in that the name is spelled Elisworth (*sic*) and the court knew on reading the signature that a person does not misspell his or her name when handwriting the same.

5) Exceedingly significant is the fact that what was presented to this court on March 28, 1978, was a document which was obviously a copy of what purported to be a letter addressed to the presiding Judge but the copy is so bad and obvious that it was suspect to the court on sight." (Emphasis added.)

The defendant has appealed, contending that he was not proven guilty of contempt beyond a reasonable doubt and that he was denied due process of law. We will take the contentions in inverse order.

I.

■■ Contempt of court has generally been defined as conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute. (*People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1, *cert. denied* (1972), 409 U.S. 989, 34 L. Ed. 2d 256, 93 S. Ct. 332, and *Caref v. Illinois* (1972), 409 U.S. 984, 34 L. Ed. 2d 249, 93 S. Ct. 333; *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.) Contempt may be either direct or indirect; however, the mere fact that a contempt is labeled direct does not necessarily mean that evidence is not required. As discussed by the Illinois Supreme Court in *People v. Jashunsky* (1972), 51 Ill. 2d 220, 223, 224, 282 N.E.2d 1, 3, 4, *cert. denied* (1972), 409 U.S. 989, 34 L. Ed. 2d 256, 93 S. Ct. 332, and *Caref v. Illinois* (1972), 499 U.S. 984, 34 L. Ed. 2d 249, 93 S. Ct. 333:

"This court discussed direct and indirect contempts in *People v. Howarth* (1953), 415 Ill. 499, observing: 'A direct criminal contempt is one which takes place in the very presence of the judge, making all of the elements of the offense matters within the personal knowledge of the judge and tending directly to obstruct and prevent the administration of justice, and includes acts committed in an integral part of the court although out of the physical presence of the judge. An indirect contempt is one which occurs out of the presence of the judge and is therefore dependent for its proof upon evidence of some kind or upon facts of which the court has no judicial notice. (*People v. Harrison*, 403 Ill. 320.) The mere filing with the clerk of the court of any document containing contemptuous matter is sufficient to constitute direct contempt. (*In re Estate of Kelly*, 365 Ill. 174.) * * * It has been held that even though the charge be of direct contempt, that fact does not entirely preclude the judge from hearing evidence to fully establish the

direct contempt. *(People v. Harrison,* 403 Ill. 320.) Where a direct contempt is committed in open court it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. However, when a direct contempt occurs in a constituent part of a court and not in the immediate presence of the judge as is the case here, extrinsic evidence is essential to substantiate the charge. *(In re Estate of Kelly,* 365 Ill. 174.) *When the contempt is not an apparent one and its demonstration depends upon the proof of facts of which the court has no judicial notice, due process requires a citation in order that defendant may meet and refute the charges.'* (415 Ill. 499, 508-509.) This last proposition was also discussed in *People ex rel. Melendez v. Melendez* (1971), 47 Ill. 2d 383. '[W]hether the contempt found here is to be considered direct or indirect is not controlling, since it is apparent from the record it was necessary for the trial court to secure and consider extrinsic evidence as to matters not within its knowledge to determine whether the defendant wilfully disobeyed the command of the court. Under such circumstances due process of law required that the contempt be established by evidence and that the respondent be given reasonable opportunity to defend. *People v. Skar,* 30 Ill. 2d 491; *People v. Gholson,* 412 Ill. 294.' 47 Ill. 2d 383, 386." (Emphasis added.) 51 Ill. 2d 220, 223-24, 282 N.E.2d 1, 3-4.

See also *People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670; *People v. Skar* (1964), 30 Ill. 2d 491, 198 N.E.2d 101.

■■ Contrary to the trial court's belief, it is well established in Illinois that perjury and false swearing, although occurring in court and witnessed by the judge, constitute at most indirect not direct contempt *(People v. Harrison* (1949), 403 Ill. 320, 86 N.E.2d 208; *People v. Wright* (1974), 21 Ill. App. 3d 247, 315 N.E.2d 79 (abstract); *People v. Koniecki* (1961), 28 Ill. App. 2d 483, 171 N.E.2d 666; *People v. Tomlinson* (1938), 296 Ill. App. 609, 16 N.E.2d 940), unless the falsity of the statement is admitted by the contemnor *(People v. Bennett* (1972), 51 Ill. 2d 282, 281 N.E.2d 664), both because the trial judge usually does not have personal *knowledge* of the truth or falsity of the statement and because false testimony usually lacks the element of immediately disrupting and disturbing the court's business. *(People v. Wright* (1974), 21 Ill. App. 3d 247, 315 N.E.2d 79 (abstract).) As the Illinois Supreme Court stated in *People v. Harrison* (1949), 403 Ill. 320, 325, 326, 86 N.E.2d 208, 211:

"The basis for such ruling is aptly stated in the *Stone case,* [118 Ill. App. 475], at page 477: 'But there is nothing in the record to disclose that the court knew the testimony was false. In a case of

direct contempt, it may act upon that of which it may take judicial notice, but it cannot judicially know that evidence is false unless at the trial it is so made to appear by the witness's own admission or perhaps by unquestioned and incontrovertible evidence. *Otherwise the court would act merely upon its belief or conclusions derived from evidence heard, and not upon matters of fact of which it had judicial cognizance, which is essential to the summary proceeding for direct contempt.* * * *If false swearing in the presence of the court constitutes direct contempt, then judicial knowledge of its falsity is, in our opinion, indispensable to the right of the court to exercise authority to commit therefor.' The reasoning in the *LaScola case* [282 Ill. App. 328] is to the same effect. While this court has not been called upon to pass upon these findings of the Appellate Court, or directly upon a similar question, the decisions in the *Berof* [367 Ill. 454, 11 N.E.2d 936] and *Sherwin* [353 Ill. 525, 187 N.E. 441] *cases* show cognizance that such contempts cannot be punished as direct contempts. We said in the *Sherwin case*, at page 528: 'An examination of the record discloses that the adjudication of guilt is at least in part necessarily based upon facts outside the personal knowledge of the presiding judge and facts which could only be determined by the taking of testimony. In view of the impossibility of anyone knowing what is taking place within the mind and heart of a fellow human being, it is manifestly impossible for the judge to have known that the plaintiff in error falsely, wickedly, knowingly and contemptuously "presented" a false bill of exceptions.' " (Emphasis added.)

■■ The State contends that the defendant's conduct here constituted a direct contempt because the document was "patently and obviously and flagrantly fraudulent." The falsity of the document was not, however, a matter within the trial court's *personal knowledge*. The judge concluded, as he himself said in his order, that two pages had been used to make the copy, that there had been an eradication of some type, and that it was "improbable" that Dr. Hasbrouck would use the language contained in the letter. From these conclusions he determined that the letter was a forgery. But a finding of direct contempt may not be based on inference or conclusions but only on facts known to the trial judge. (*People v. Harrison* (1949), 403 Ill. 320, 86 N.E.2d 208; *People v. Loughran* (1954), 2 Ill. 2d 258, 118 N.E.2d 310.) As the Illinois Supreme Court stated in the latter case:

"The power to adjudge guilt and impose punishment without proof or examination, and without plea, trial or issue exists in no other situation or proceeding. It is an exception to our constitutional guarantees which we would regard as intolerable in any

other proceeding or for any other purpose. It is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is universally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution and strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered." 2 Ill. 2d 258, 263, 118 N.E.2d 310, 313.

In addition, there were no facts before the judge from which he could "know" that the defendant, without question, was the author of the forgery. The defendant merely stated that he had been in the hospital and that a social worker gave him the letter. From this statement which was uncontradicted, it could equally be concluded that the defendant had been in the hospital but that the social worker, for some reason, created a composite letter and gave it to the defendant who received it in perfect good faith. As was held in *People v. Hille* (1915), 192 Ill. App. 139, before a defendant can be found guilty of direct contempt, it must appear beyond a reasonable doubt from the personal knowledge of the court or by admission from the lips of the defendant in open court and from no other source that the representations were untrue and that defendant knew they were untrue when they were made. Thus it has been held that before a person can be found guilty of direct criminal contempt predicated on an admission of perjury, the admission of the witness that his testimony was false must be accompanied by an admission that it was wilfully false or the circumstances must be such that the court could so hold as a matter of law. *Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 344 N.E.2d 805, *appeal denied* (1976), 63 Ill. 2d 564; *People v. Bialek* (1961), 31 Ill. App. 2d 281, 175 N.E.2d 278.

Finally, it is doubtful whether the defendant's conduct had the element of immediately disrupting and disturbing the court's business required by the United States Supreme Court for the requirements of notice and hearing to be waived. (*People v. Wright* (1974), 21 Ill. App. 3d 247, 315 N.E.2d 79 (abstract).) As the Supreme Court stated in *In re Oliver* (1948), 333 U.S. 257, 275, 92 L. Ed. 682, 695, 68 S. Ct. 499, 509:

"The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public."

In light of our conclusion, it is not necessary for us to determine

whether the mere fact the trial judge investigated the doctor's identity rendered the procedure improper despite his statement that he did not rely on his investigation. Obviously, if he had relied on it, the defendant would, for that reason alone, have been entitled to a full hearing. See for example, *People v. Pincham* (1976), 38 Ill. App. 3d 1043, 350 N.E.2d 67.

## II.

From the previous discussion it is equally clear that defendant's guilt was not established beyond a reasonable doubt since there was no evidence in the record to establish either that the letter was a forgery or that the defendant knew it was a forgery. The defendant is presumed innocent until proven guilty beyond a reasonable doubt. *(People v. Skar* (1964), 30 Ill. 2d 491, 198 N.E.2d 101.) The State contends that the line drawn across the page, the smudges, the language of the letter, poor grammar and misspelling of the doctor's name all prove the letter was a forgery. There is no proof that the line was caused by putting two pages together; indeed, it is difficult to see how the date could have been typed where it was if two pages had been put together. The line could as easily have originally been on the letterhead or could have been caused by a defect in the photocopying machine. We agree that the smudge below the words "Medical Verification" appears to be due to an erasure, but that proves no more than that someone either before or at the same time as the letter was written typed some letters which needed to be erased. The other smudge mentioned by the court appears to be no different from other smudges on the page which are not alleged to be due to erasures. We agree that some of the wording of the letter could be improved and that it contains some bad grammar. Bad grammar, however, is not an uncommon occurrence in correspondence. Furthermore, there is nothing in the record to suggest that the letter could not have been typed by someone at the hospital and simply signed by Dr. Hasbrouck.

For the foregoing reasons, the conviction is reversed.

Reversed.

JIGANTI, J., concurs.

Mr. JUSTICE JOHNSON, dissenting:

I respectfully dissent from the majority opinion reversing the trial court. Conduct in the presence of the court which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of law into disrespect, constitutes a direct contempt and is punishable as such. *(People v. Harrison* (1949), 403 Ill. 320, 86 N.E.2d 208; *People v. Sherwin* (1929), 334 Ill. 609, 166 N.E. 513; *People v.*

416

*Cochrane* (1923), 307 Ill. 126, 138 N.E. 291; *People v. Gard* (1913), 259 Ill. 238, 102 N.E. 255; *Dahnke v. People* (1897), 168 Ill. 102, 48 N.E. 137.) Upon the commission of a direct contempt in open court, it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. *Cooke v. United States* (1925), 267 U.S. 517, 69 L. Ed. 767, 45 S. Ct. 390; *In re Savin* (1889), 131 U.S. 267, 33 L. Ed. 150, 9 S. Ct. 699; *In re Terry* (1888), 128 U.S. 289, 32 L. Ed. 405, 9 S. Ct. 77; *People v. Whitlow* (1934), 357 Ill. 34, 191 N.E. 222; *People v. Andalman* (1931), 346 Ill. 149, 178 N.E. 412.

The obligation of this court, in review, is most clearly articulated by the Illinois Supreme Court in *People v. Graves* (1979), 74 Ill. 2d 279, 284, 384 N.E.2d 1311, 1313-14:

"In *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 59-60, quoting *In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, contempt of court was defined as 'conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute.' Where, as here, the conduct in question is committed in the presence of the court, neither notice nor pleading is necessary; the contemnor may be punished summarily 'because the acts occur in the presence of the judge and presumably within his personal observation and knowledge.' (*People v. Gholson* (1952), 412 Ill. 294, 299.) *As a reviewing court, we determine whether there is sufficient evidence to support the finding of contempt (People v. Richardson* (1947), 397 Ill. 84, 90) *and whether the judge considered only facts within his personal knowledge.* The latter requirement is peculiar to cases of direct contempt such as that involved here, and is warranted by the summary nature of direct contempt proceedings. *People v. Loughran* (1954), 2 Ill. 2d 258, 263." (Emphasis added.)

In what was plainly an act carried out in the presence of the court, the trial judge recognized defendant's letter to be a false document. The majority opinion states that "there were no facts before the judge from which he could 'know' that the defendant, without question, was the author of the forgery." However, all elements of the contempt were matters within the personal knowledge of the judge. When he looked at the letter, he immediately knew, beyond a reasonable doubt, that the doctor's name and signature were not authentic. The doctor's name, Ellsworth Hasbrouck, and its correct spelling were personally well known to the trial judge; yet he properly took caution not to make his personal acquaintance with the doctor the sole basis of his decision. He also pointed to five independent characteristics of substance and content of

the document, which he used in determining its counterfeit nature. The question at trial was not one of facts "before the judge," but, rather, facts *known to the judge, e.g.,* his personal and judicial experience. See *People v. Siegal* (1948), 400 Ill. 208, 79 N.E.2d 616; *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.

Further, the "author of the forgery" is irrelevant to this appeal. Defendant was using the letter as evidence to excuse his absence from the court. He presented the document to the judge, in open court, and represented it to be authentic. At the end of trial, the judge granted a continuance to allow counsel the opportunity to verify the letter. No such verification appears in the record. The court's order was not entered until after the continuance. It is not the place of this court or any court to folly in conjecture as to who *actually* issued the subject letter. It is only our role to determine that there were some grounds upon which the trial court could base its finding the letter nonauthentic.

Defendant's attempt to offer the false document strikes at the court's effort to administer justice, and his intent to do so may be inferred from the character of his actions. (*People v. Collins* (1978), 57 Ill. App. 3d 934, 936, 373 N.E.2d 750, 751.) The courts are vested with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and proper administration of their judicial powers. (*People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670, 671.) Our supreme court has followed the United States Supreme Court in precisely expressing the posture of this dissent. It stated in *People v. Siegal* (1948), 400 Ill. 208, 212-13, 79 N.E.2d 616, 618:

> "The Supreme Court of the United States, in a studied opinion by Mr. Justice Harlan in the case above cited, (*Ex parte Terry*, 128 U.S. 289, 32 L. ed. 405,) in discussing this particular question, stated: 'It is true, as counsel suggest, that the power which the court has of instantly punishing without further proof or examination contempts committed in its presence, is one that may be abused and may sometimes be exercised hastily or arbitrarily. But that is not an argument to disprove either its existence or the necessity of its being lodged in the courts. That power cannot be denied them without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community. What was said in *Ex parte Kearney*, 20 U.S. Wheat. 39, 45 (5:391, 393,) may be here repeated: "Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice." ' "

In summary, any party who swears to false documents in open court should be subjected to punishment for direct contempt. Where, as here, the trial judge makes a determination, based upon his personal knowledge and experience, this court should affirm that judgment unless it is outweighed by the evidence in the record.

I would affirm the judgment of the trial court.