No. 3--06--0052

Filed July 11, 2007.

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 05--TR--93728 & 05--TR--93729 |
| SARUD Y. ABDENNABI, | ) ) ) ) | Honorable Michael J. Powers, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the opinion of the court:
_____

The defendant, Sarud Y. Abdennabi, was charged with speeding (625 ILCS 5/11--601(b) (West 2004)) and operating an uninsured vehicle (625 ILCS 5/3--707 (West 2004)). The circuit court held the defendant in direct criminal contempt of court for presenting a fraudulent insurance card in open court. On appeal, the defendant argues that the circuit court erred when it found him in direct criminal contempt without holding an evidentiary hearing on the issue. We reverse.

The defendant first appeared on the charges on October 6, 2005. After the court asked him if he had proof of insurance, the pro se defendant tendered an insurance card to the judge.

The judge noted that the card appeared suspicious, and he had the bailiff call the insurance company listed on the card. The bailiff reported that the company confirmed it was a fraudulent card. The circuit court continued the matter so the defendant could hire an attorney and return at a later date.

At the January 5, 2006, hearing, the court allowed defense counsel to present a defense to the contempt charge. Defense counsel argued that (1) the case law requires that there be a showing of the defendant's mental state; and (2) because the bailiff made the phone call, the judge did not have personal knowledge of all of the facts necessary to find direct criminal contempt. The court found that it was not reasonable to believe that the defendant did not know the card was fraudulent, and that he personally observed the operative facts of the incident. Then, the court held the defendant in direct criminal contempt of court.

The defendant's sole contention on appeal is that the circuit court erred when it held him in direct criminal contempt without holding an evidentiary hearing on the issue. The State argues that, because the record lacks a report of proceedings from October 6, 2005, and a bystander's report, the defendant has provided an insufficient record to allow this court to do anything other than affirm the circuit court's judgment.

The appellant has the duty to supply a sufficient record for

2

review.  People v. Johnson, 285 Ill. App. 3d 307, 674 N.E.2d 487 (1996).  Despite the State's claim that the record is incomplete without the transcript from October 6, 2005, we believe that the transcript from January 5, 2006, constitutes a sufficient record for us to decide the case.  Indeed the defendant's attorney made it clear that he was using the January 2006 hearing to document the proceedings of the earlier hearing.  In essence, he was creating a bystanders' report on the record.  Furthermore, based on the record before us, requiring the appellant to submit a bystander's report pursuant to Supreme Court Rule 323(c) (166 Ill. 2d R. 323(c)) would be pointless, as the January 2006 transcript clearly indicates that neither party nor the court could recall if the defendant commented on whether he knew the card was false when he presented it to the court.  Consequently, we find the record adequate and we will address the merits of the defendant's argument.

ANALYSIS

"Direct criminal contempt is contemptuous conduct occurring 'in the very presence of the judge making all of the elements of the offense within his own personal knowledge.' People v. Harrison, (1949), 403 Ill. 320, 323-24, Direct contempt is 'strictly restricted to acts and facts seen and known by the court, and no matters resting upon opinions, conclusions, presumptions, or inferences should be considered', People v.

3

Loughran (1954) 2 Ill. 2d 258, 262." People v. Simac, 161 Ill. 2d 297, 360, 641 N.E.2d 416, 420 (1994). Direct criminal contempt is defined as conduct or actions that tend to directly obstruct and prevent the administration of justice. People v. Randall, 89 Ill. App. 3d 406, 411 N.E. 2d 1017 (1980). "Direct criminal contempt may be found and punished summarily because all elements are before the court and, therefore, come within its own immediate knowledge." Simac, 161 Ill. 2d at 306, 641 N.E.2d at 420. We review a finding of direct criminal contempt by addressing whether the evidence was sufficient to support the finding, and whether the judge considered facts outside of his personal knowledge. Simac, 161 Ill. 2d at 306, 641 N.E.2d at 420.

Before a defendant can be found guilty of direct contempt regarding, as here, a case of alleged false representation, it must appear beyond a reasonable doubt from the personal knowledge of the court or by admission from the lips of the defendant in open court and from no other source that the representations were untrue and that defendant knew they were untrue when they were made. People v. Randall, 89 Ill. App. 3d at 414, 411 N.E. 2d at 1022 (1980).

In this case, the first problem is that the trial judge did not know the proof of insurance document was fraudulent. He suspected it might be and enlisted the assistance of the bailiff

4

to confirm his suspicion.  The bailiff reported that whomever he had called said the card was fraudulent -- still leaving that information outside the ambit of the judge's personal knowledge.  Clearly, if an investigation is necessary to assess whether direct criminal contempt has occurred, the element of personal knowledge of all of the acts and facts has not been satisfied.

The second problem is that the court had no basis for making the requisite finding that the defendant's conduct was willful.  Simac, 161 Ill. 2d at 307, 641 N.E. 2d at 421.  In January 2006, neither the court nor the prosecutor could say whether the defendant stated on October 6, 2005, that he did not know the card was fraudulent, the court stated, "I don't know affirmatively one way or the other whether or not he made that representation.  I'm not going to say that he did because I don't recall that and I don't have that written anywhere, so I'm not going to make that representation that he said that."  We find nothing in this case to suggest that the defendant actually knew the card was fraudulent and, without such evidence, the trial court could not find the requisite intent to mislead the court.

In sum, the trial judge lacked personal knowledge that the card was fraudulent; he relied on inference, opinion, or presumption to intuit that it might be; he had someone else investigate whether it was; and he apparently made no effort to ascertain whether the defendant knew he had a fraudulent card.

5

Thus, the circuit court found the defendant guilty of direct criminal contempt without any showing that the defendant's alleged conduct was willful and had the effect of immediately disrupting and disturbing the court's business. Accordingly, the evidence was insufficient to support the finding of defendant's guilt.

The judgment of the circuit court of Will County is reversed.

Reversed.

CARTER, J., concurs.


JUSTICE SCHMIDT, specially concurring:

I concur in the result, but not in the entire analysis. I believe that a reversal is warranted by what the majority describes as "the first problem." I strongly disagree with the majority's discussion of "the second problem." The majority states, "We find nothing in this case to suggest that the defendant actually knew the card was fraudulent and, without such evidence, the trial court could not find the requisite intent to mislead the court." Slip op. at 5. Apparently, the majority would require a confession from defendant that he knew the card was fraudulent in order to find intent to mislead the court. I think most reasonable people would agree that it would be, at best, highly improbable for someone to have a fraudulent

6

insurance card in his wallet without knowing it was fraudulent. Where do people get insurance cards? Answering my own rhetorical question, I suggest that it is either directly from our insurance agent or in an envelope mailed to us directly from our insurance carrier, along with a statement and/or a declarations page. The fact that the card is fraudulent can only lead to the rational inference that defendant did not get the card either directly from his insurance agent or mailed directly to him from his insurance carrier. Had defendant pulled a Molotov cocktail out of his coat, ignited a wick and thrown it at the judge, would the court find direct criminal contempt inappropriate because there was no evidence that defendant knew the bottle contained a flammable liquid?

Of course he knew it was fraudulent, and of course he handed it to the court representing it to be a valid insurance card, satisfying the requirement that he intended to mislead the court. The only problem in this case is that the proof that the card was fraudulent came from outside the courtroom and, therefore, direct criminal contempt was not the proper charge. The defendant should have been charged with indirect criminal contempt as the majority correctly points out.